FLORENCE LYNCH *vs.* SPRINGFIELD SAFE DEPOSIT AND TRUST COMPANY, administrator with the will annexed.

ELIZABETH LYNCH *vs.* SAME.

Hampden. February 6, 1936. — March 31, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Negligence*, Motor vehicle, Gross, In use of way.

Evidence respecting the circumstances of a collision of an automobile with the rear of a lighted motor truck in the nighttime was *held* to have left it a matter of conjecture whether intoxicating liquor, which the driver had drunk over three hours before, was a contributing cause of the accident, and not to warrant a finding that in other respects the driver was guilty of gross negligence.

TWO ACTIONS OF TORT against the administrator with the will annexed of the estate of Isadore Gimbel. Writs dated January 11, 1933.

The actions were tried together in the Superior Court before *Burns*, J. The jury found for the plaintiff in the first action in the sum of $500 and for the plaintiff in the second action in the sum of $9,500. The defendant alleged exceptions.

*J. M. Carroll*, (*I. R. Shaw* with him,) for the defendant.

*C. F. Ely*, for the plaintiffs.

QUA, J. The plaintiffs, while riding as guests of one Gimbel, the defendant's intestate, in an automobile driven by him, were injured by a collision with a large truck which was proceeding in the same direction on the highway. The only question is whether there was any evidence of gross negligence on the part of Gimbel.

There was evidence of the following tenor: At about 10:30 P.M. Gimbel invited the two plaintiffs and another girl to ride from Springfield to their home in Westfield. When they reached Tubbs Hill, so called, in West Springfield, going in a westerly direction, the Gimbel automobile ran into the rear of the truck, killing Gimbel and injuring the plaintiffs. The road was a two-lane cement road, straight and dry. The weather was clear. There was no east bound traffic. The truck was on its right hand side of the road. The back of it was lighted with six lights. The accident happened about 10:40. The headlights of the Gimbel automobile were lighted. One of the plaintiffs testified that as the automobile neared the foot of Tubbs Hill she noticed a marked increase of speed; that there was a lighted vehicle about half way up the hill; that because of the speed she looked at Gimbel and saw his head and eyes straight ahead, his hands on the wheel and the wheel moving just enough to give it direction. Looking back to the road she noticed that they were close up to the vehicle and she shouted, "look out." The Gimbel automobile was then about thirty yards from the truck and going at least fifty miles an hour. The other plaintiff testified that as far as she knew Gimbel was looking straight ahead; that she saw the truck when they were about twenty-five yards away; and that Gimbel's speed was at least thirty-five or forty miles an hour. The third passenger

testified that Gimbel stepped on the gas as they started up the hill and that Gimbel was looking straight ahead.

There was evidence that between 5:15 and 7 P.M. Gimbel had several drinks of whiskey and some food, and that at seven o'clock he was "feeling good." One of the plaintiffs testified that Gimbel was sober at the time of the accident. Neither of the other passengers noticed or recalled any indication of liquor about him.

We think on this evidence it was a matter of conjecture whether any liquor which Gimbel had taken early in the evening was a contributing cause of the accident at 10:40. *Marcienowski* v. *Sanders*, 252 Mass. 65, 67. See *Bertera* v. *Cuneo*, 273 Mass. 181. With this element out of the case, it seems to a majority of the court that there was not quite enough to support a finding of that high degree of culpability and indifference to duty which is the essential characteristic of gross negligence. *Altman* v. *Aronson*, 231 Mass. 588, 591. There is no evidence of deliberate inattention, or of voluntary incurring of obvious risk, or of impatience of reasonable restraint, or of persistence in a palpably negligent course of conduct over an appreciable period of time. These are some of the more common *indicia* of gross negligence. The evidence leaves the deceased immediately before the accident holding the wheel and looking ahead. So far as appears, this accident, serious as it was, may have resulted from a mere lapse of eyesight, perception or judgment which may have been only momentary. There was evidence of a speed which could have been found excessive, but it was by no means extraordinary or even very unusual on a road of that kind. The warning came too late to brand the conduct of the deceased as grossly negligent.

Although each case must be decided upon its own peculiar facts, attention is called to the following as sufficiently close to be instructive: *Shriear* v. *Feigelson*, 248 Mass. 432; *Bertelli* v. *Tronconi*, 264 Mass. 235; *Cook* v. *Cole*, 273 Mass. 557; *McKenna* v. *Smith*, 275 Mass. 149; *Richards* v. *Donohue*, 285 Mass. 19; *Curley* v. *Mahan*, 288 Mass. 369. We think the case is distinguishable from *Stowe* v. *Mason*,

289 Mass. 577, *Lefeave* v. *Ascher*, 292 Mass. 336, and other cases cited by the plaintiffs.

In each case the entry must be

*Exceptions sustained.*

*Judgment for the defendant.*