ELIZABETH J. BEATON *vs.* HUGH DAWSON.

JOHN BEATON *vs.* SAME.

Suffolk. May 4, 1939. — June 29, 1939.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Negligence,* Gross, Motor vehicle, In use of way.

Evidence of the circumstances of a collision of an automobile with a tree eighteen inches from the curb of a road curving "gently" to the operator's left when he, driving at a speed of thirty miles per hour, for two or three seconds turned to observe something back of his seat, did not warrant a finding that he was grossly negligent.

TWO ACTIONS OF TORT. Writs in the District Court of Chelsea dated September 16, 1937.

On removal to the Superior Court, verdicts were returned before *J. W. Morton,* J., for the plaintiffs, respectively, in the sums of $1,800 and $126 on the second counts of the declarations.

*M. Z. Kolodny,* (*M. J. Prendergast* with him,) for the defendant.

*R. W. Frost,* (*M. B. Breath* with him,) for the plaintiffs.

Cox, J.   These are two actions of tort, the first being brought by the minor plaintiff, hereinafter referred to as the plaintiff, to recover damages for personal injuries alleged to have been sustained as the result of the operation by the defendant, on December 24, 1936, of a motor vehicle in which she was riding; the second being brought by the plaintiff's father to recover consequential damages. There were two counts in each declaration, the first in each case respectively being based upon the alleged negligence of the defendant in the operation of his automobile, and the second upon his alleged gross negligence.   In each case the jury returned a verdict for the defendant on the first count and for the plaintiff on the second count.

The evidence consisted of the report of the auditor who heard the cases and testimony introduced at the trial.   The auditor found, basing his finding solely upon the force of the collision of the automobile with a tree, hereinafter referred to, that the automobile, operated by the defendant, "was going probably at thirty miles an hour or thereabouts"; that the road curved "gently" to the left as the automobile was headed; that the plaintiff, who was seated in the rear, was dressed in pajamas and bed room slippers, with her hair in curl papers; that there were some bottles of cider on the floor in the rear of the automobile, one of which broke and the plaintiff screamed; that the "driver of the car, the defendant, thereupon turned his head, lost control of his car and it ran into a tree at the right of the road near the curb injuring the occupants."   The auditor states: "The crash came directly after the breaking of the bottle but at what point in the road the car was when the bottle broke I cannot determine from the evidence, but I believe and find that Dawson's lack of attention to the road was momentary, instinctive and not deliberate."   He found for the defendant in each case.

At the trial the plaintiff, after relating the circumstances

of her being in the automobile, testified that "Dawson kept
going and came near O'Hara's house and . . . [she] looked
on the floor and . . . saw the jugs had broken and . . .
[she] said, 'Hugh, the jugs have broken,' and he turned
around . . . to look and in a few seconds they hit the
tree; that when Dawson turned around and looked at her,
he was still looking at her when the crash came"; that
"when she said, 'The bottles are busted,' Dawson turned
around and looked at her and put his hand down in back
of the seat 'as if to fix the jug,' and then the crash came";
that "two or three seconds is the time Dawson was looking
away and the car was going along without him looking in
the direction the car was going; that for two or three sec-
onds Dawson looked in her direction with his hand down
toward the bottom of the seat and 'in two or three seconds
bang . . . .'"

The automobile struck a tree that was from ten to eighteen
inches in from the outside edge of the curbstone. A witness
who identified the O'Hara house from a photograph esti-
mated the distance from the roadway in front of the house
to the tree as about two hundred fifty to three hundred
feet. There was no other evidence bearing upon the loca-
tion of the automobile as it travelled along the highway,
where it was with reference to the O'Hara house or how far
it travelled between the time when the plaintiff called to
the defendant and the collision with the tree. Apart from
the finding of the auditor, there was no evidence relating
to speed except what might be inferred from the testimony
that the front end of the automobile was wedged against
the tree, its right front somewhat telescoped, and the wind-
shield and headlights broken; with its left front wheel and
two rear wheels on the main roadway, its right front wheel
on the curbstone and its right front corner against the tree.
The accident occurred shortly after three o'clock in the
afternoon.

The defendant's exceptions are to the denial of his motion
for a directed verdict in each case, and to portions of the
judge's charge.

In the case of *Altman* v. *Aronson*, 231 Mass. 588, Chief

Justice Rugg framed a definition of gross negligence and added these words, at page 592, "This definition does not possess the exactness of a mathematical demonstration. But it is what the law now affords. It is the result of our own decisions. . . . The definition here given does not differ in any essential particular from the statement of the rule made by some courts to the effect that gross negligence is the omission of even such diligence as habitually inattentive and careless men do not fail to exercise in avoiding danger to their own person or property." In the case at bar the defendant owed the plaintiff some duty. No question is raised but that the verdict for the defendant on the first count of the declaration in each case was based upon the instruction of the trial judge and upon the finding of the jury that the relationship between the plaintiff and the defendant was that commonly referred to as guest and host. The duty, therefore, owed to the plaintiff by the defendant was to refrain from conduct amounting to gross negligence, that is, he was not to omit such diligence as habitually inattentive and careless men do not fail to exercise in the same circumstances.

Upon this record we see no breach of any such duty. There was no "heedless and palpable violation of legal duty respecting the rights of others." The conduct of the defendant did not amount to "indifference to present legal duty and to utter forgetfulness of legal obligations so far" as the plaintiff might be affected. *Altman* v. *Aronson,* 231 Mass. 588, 591. It is true that each case must be decided according to its peculiar features. It is also true that where there is gross negligence, there is always negligence. Without attempting, as is frequently done, to put the case at bar into a class with other decided cases, or to distinguish it from other cases, but mindful of the danger of drawing the line too near to due care and of finding gross negligence where only ordinary negligence exists, we are of the opinion that upon the record the plaintiff in each case is not entitled to recover, and that there was error in the denial of the defendant's motions for a directed verdict on the second count of each declaration. A careful examination of the

cases cited by the plaintiffs does not shake us in this conclusion.

It becomes unnecessary to consider the other exceptions of the defendant. In each case the entry will be

*Exceptions sustained.*
*Judgment for defendant.*