MARGARET BRUNO *vs.* ARTHUR F. DONAHUE.

Middlesex.    October 4, 1939. — January 13, 1940.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Negligence,* Gross, Motor vehicle.

A finding of gross negligence of the operator of an automobile was not warranted by evidence which showed merely that the automobile tipped over when, using both hands on the steering wheel, he was extricating it from a soft shoulder of a way into which he had driven while making a turn with one hand.

TORT.    Writ in the Third District Court of Eastern Middlesex dated April 2, 1937.

On removal to the Superior Court, a verdict for the plaintiff in the sum of $515 was returned at the trial before *Morton*, J.

*J. H. Gilbride,* (*C. R. Flood* with him,) for the defendant.

*T. L. Mackin,* for the plaintiff.

Cox, J. The jury found for the plaintiff in this action of tort, and the case is here upon a report by the trial judge upon the following stipulation: "If on the pleadings and the evidence, my ruling of law on the defendant's motion was wrong, judgment is to be entered for the defendant. If on the pleadings and the evidence my rulings of law on the motion were right, the case is to be referred back to the trial court for action on the motion for a new trial."* The plaintiff's declaration is in two counts, in both of which it is alleged that she was a passenger in an automobile operated by the defendant. In the first count she seeks to recover on the ground that the defendant was grossly negligent, and in the second, on the ground that his conduct that resulted in her injuries was wilful and wanton. The report contains no specific reference to the two counts of the declaration. It merely states that "This is an action of tort . . . . There was a verdict for the plaintiff in the case . . . . At the close of the evidence, the defendant filed a motion for directed verdict on the ground that the evidence did not warrant a finding of gross negligence and duly excepted to my refusal to allow this motion. This report contains all the evidence material to the issues raised. The pleadings may be referred to and by reference thereto are made a part hereof."

A careful examination of the report fails to disclose any evidence whatever of wilful and wanton conduct on the part of the defendant, and although the report is by no means as clear upon the point as it should be, nevertheless we are of the opinion that the questions raised by it are whether the plaintiff is entitled to hold her verdict on the ground that there was evidence of gross negligence, subject to action by the trial court on the plaintiff's motion for a

---

* This motion was by the plaintiff, on the ground that the damages were inadequate. — REPORTER.

new trial, or whether judgment should be entered for the defendant. The plaintiff makes no other contention.

On the morning of May 26, 1936, at about quarter past twelve, the automobile, in which the plaintiff, her female companion, the defendant and his male companion were riding, overturned and the plaintiff was injured. The jury could have found that the four occupants had been together since about eight o'clock in the evening. They visited two resorts where liquor was served. At the first place three of them, including the defendant, had "some beer in a small pitcher" at some time between a quarter of nine and 9:30, and at the second place, between eleven and 11:45, three of them, including the defendant, each had a glass of beer, and the plaintiff had a "Ward Eight." When they left, between 11:30 and 11:45, they all got into the automobile on the front seat; the defendant was driving, with the plaintiff's female companion sitting next to him and the male friend of the defendant sitting next to her with the plaintiff on his lap. They travelled over what is known as the old Middlesex Turnpike, a dirt road, "rough and bumpy," but "pretty much of a straight section of highway." The record discloses nothing as to the existence of any grades upon the road. As they were travelling along the turnpike at a speed of from thirty-five to forty miles an hour, the defendant started to drive with his left hand, putting his right hand on the left knee of the girl sitting next to him; "everybody spoke to him about it," and he "heeded the objections . . . he kept taking his hand off . . . and putting it back on her knee again." The turnpike runs into the Concord Road which has a hard tarvia surface that is about twenty-four feet in width. Directly opposite where the turnpike joins the Concord Road there is a dirt and cinder road with a gate across it, in front of which there is a gravel and cinder shoulder about eight feet in width. The plaintiff testified "that the intersection had the appearance of the street they were on continuing straight across, but that as one got closer to it one was able to see that there was a gate of some kind on the opposite side of the intersection; that as one drove along the turnpike

approaching Concord Road which was the cross street, the
first impression was that the turnpike continued straight
across Concord Road, but as you get closer to the intersec-
tion you could see that the other side of the intersection
was shut off in some way and that it was about when she
saw the barrier on the other side of the street that she heard
somebody say something about turning to the left; that
at that instant Donahue [the defendant] had his hand on
. . . [the] knee." As they approached the Concord Road,
the defendant had his left hand on the wheel and his right
hand on the girl's knee. Some one saw the dead end and
told the driver to "Take left." He slowed down to a speed
variously estimated at from less than thirty to thirty-five
miles an hour, took a wide turn to the left, and the auto-
mobile hit the soft shoulder on the side of the road and
came back on the road again. The defendant put both
hands on the steering wheel and tried to straighten the auto-
mobile wheels, but could not, and the automobile was over-
turned in about the middle of the road. The night was
clear and the roads were dry. Prior to reaching the inter-
section, the evidence placed the speed of the automobile
at from thirty to forty-five miles an hour. The plaintiff
testified, and there was no evidence to contradict her upon
this point, that when the right front wheel of the automo-
bile struck the soft shoulder on the far side of the Concord
Road in the direction they were travelling, it was "at that
instant for the first time the car seemed to get out of con-
trol; that up until that time the car was under control and
going along all right . . . ." She further testified that at
that point when the car seemed to get out of control, the
driver took his right hand from the girl's knee and put both
hands on the wheel, swung sharply to the left and brought
the automobile back on the hard part of Concord Road,
and almost instantly the car turned over. She also testi-
fied that "there was nothing out of the way about the opera-
tion of the car or the action of either of the young men until
a few minutes before the accident took place; that prior
to that the car had been going along somewhat in the center
of the street in an ordinary fashion." On the question of

control of the automobile, the plaintiff's female companion testified that when the right wheel struck the soft shoulder "the car for the first time seemed to get out of control and when that took place the operator put both hands on the wheel and pulled his car to the left back on the highway . . . ." In answer to the question whether the defendant had perfect control before the automobile hit the soft shoulder, she replied: "Yes, I think he did have perfect control."

It is true that the plaintiff testified that she told the defendant to "put both hands on the wheel but he didn't do it because he said he could drive just as well with one hand," but in that connection she also testified "that after that his hand came up on the wheel and he slowed down and turned to the left as he came into the intersection." Apart from the evidence that the defendant had some beer, the only other testimony bearing upon his condition at the time of the injury came from a part-time police officer who was at the scene and who testified that there was "no evidence of liquor one way or another, no evidence whatsoever of any liquor." The uncontradicted evidence was that there was no other traffic of any kind on the turnpike.

It has been said that gross negligence "is the omission of even such diligence as habitually inattentive and careless men do not fail to exercise in avoiding danger to their own person or property." *Altman* v. *Aronson*, 231 Mass. 588, 593. *Beaton* v. *Dawson*, 303 Mass. 429, 432. In *Lynch* v. *Springfield Safe Deposit & Trust Co.* 294 Mass. 170, at page 172, it was said that some of the more common *indicia* of gross negligence are "deliberate inattention, or . . . voluntary incurring of obvious risk, or . . . impatience of reasonable restraint, or . . . persistence in a palpably negligent course of conduct over an appreciable period of time." It is true that each case must be decided according to its peculiar features. In the case at bar the features that stand out and require consideration are speed, liquor, four people in the front seat, and driving with one hand.

The speed at which the automobile was being operated would not, in and of itself, amount to gross negligence, *Kohutynski* v. *Kohutynski*, 296 Mass. 74; and we do not

think that the evidence as to the use of liquor by the defendant and its effect upon him, standing alone, would warrant a finding of gross negligence. *Marcienowski* v. *Sanders*, 252 Mass. 65, 67. *Lynch* v. *Springfield Safe Deposit & Trust Co.* 294 Mass. 170, 172. See *Bertera* v. *Cuneo*, 273 Mass. 181. The fact that there were four persons on the front seat, on this record, is not enough to constitute gross negligence. *Carpenter* v. *Anderson*, 301 Mass. 550. We are of the opinion that in the circumstances disclosed the permissible findings as to the defendant having his right hand on the knee of the girl, in driving with his left hand, together with what thereafter occurred, in and of themselves, would not warrant a finding of gross negligence. No finding was permissible other than that up to the time the automobile reached the intersection it was in the defendant's control. There is no evidence that his attention was diverted from the road or that his conduct was of the character, not only in its nature but also in its results, found in *Rog* v. *Eltis*, 269 Mass. 466. He was not "looking around" as was the defendant in *Smith* v. *Axtman*, 296 Mass. 512. In *Castelli* v. *Padeni*, 301 Mass. 603, the defendant was operating his automobile at night at a speed of thirty-five to forty miles an hour on a road that did not cross an intersecting way. He "'came right down through the intersection,' crossed the . . . road, 'went right up on the sidewalk and turned to the right' on the left side of . . . [the] road . . . [he] 'then swung his car back towards the road and the left rear collided' with a telephone pole on the left of the road which was 'sixty to seventy-five feet easterly of the easterly side' of the road" on which he had been travelling (page 604). It was said at page 605: "The fact that he overran the intersection, in the circumstances shown, did not go to this extent" (of showing conduct amounting to gross negligence). The case at bar is distinguishable from *Granger* v. *Lovely*, 302 Mass. 504, 507.

It is true that the jury was not required to pass separately upon the various elements that entered into the defendant's conduct. On the contrary, that conduct was to

be considered as a whole, but in the opinion of a majority of the court the evidence did not warrant a finding of that high degree of culpability and indifference to duty that is the essential characteristic of gross negligence. We think that the case comes within the class of cases of which examples are *McKenna* v. *Smith*, 275 Mass. 149, *Lynch* v. *Springfield Safe Deposit & Trust Co.* 294 Mass. 170, *Castelli* v. *Padeni*, 301 Mass. 603, and *Beaton* v. *Dawson*, 303 Mass. 429. See *Cutting* v. *Shelburne*, 193 Mass. 1.

In accordance with the stipulation, judgment is to be entered for the defendant.

*So ordered.*