JOSEPH L. McGRATH, administrator, *vs.* G & P THREAD CORP. & another.

Plymouth. April 4, 1967. — June 30, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Negligence,* Gross negligence, Motor vehicle. *Proximate Cause.*

A finding of gross negligence on the part of the operator of an automobile toward a guest riding therein was not warranted by evidence merely that the operator, ignoring a stop sign at an intersection, entered the intersection without slowing and brought about a collision with another automobile there and injury to the guest. [62]

Evidence that a sixty-three year old woman having arteriosclerotic disease suffered head and other injuries when she was thrown out of an automobile onto the street in a collision with another automobile and died several hours later from "hemorrhage of brain" warranted a finding that her death was proximately caused by negligence of the operator of one of the automobiles involved in the collision. [62–63]

TORT. Writ in the Superior Court dated December 21, 1962.

The action was tried before *Cahill, J.*

The case was submitted on briefs.

*Robert G. Clark, Jr.,* for the defendants.

*Eugene F. Endicott* for the plaintiff.

REARDON, J. The plaintiff has brought this action of tort to recover for the death and conscious suffering of his intestate. The declaration contains six counts, three against each defendant. Two (1 and 4) allege death as the result of negligence, and two (2 and 5) as a result of wilful, wanton or reckless conduct, while the remaining two counts (3

and 6) are for conscious suffering as a result of gross negligence. At the conclusion of the evidence the defendants moved for directed verdicts on all counts. The motion was allowed as to the counts alleging wilful, wanton or reckless conduct (2 and 5) but denied as to the others (1, 3, 4, 6). The defendants excepted to the denial. The jury returned verdicts for the plaintiff on the remaining counts (1, 3, 4, 6).

The jury could have found that the plaintiff's intestate, a guest in an automobile owned by the defendant corporation and operated by the defendant J. Bernadina Peterson, was thrown from the car following an intersection collision in Rockland on the afternoon of August 15, 1962, and died at the Brockton Hospital shortly after midnight that same night. It was also open for the jury to find that the defendant Peterson proceeded along Crescent Street and approached an intersection with Howard Street, which intersection was located in a residential area. There was a stop sign on Crescent Street approximately eighteen feet from the intersection. At the stop sign, the view of Howard Street to the right was obscured by a line of trees. The defendant Peterson testified that she had traveled this route frequently and was familiar with the stop sign guarding the intersection. In spite of her knowledge of the intersection, it could have been found that the defendant Peterson failed to stop and entered the intersection without slowing down, whereupon the car operated by the defendant Peterson was struck on the right rear by an automobile approaching from her right along Howard Street. This car had entered the intersection first at a speed of fifteen to twenty miles an hour, which was considerably less than that of the car driven by the defendant Peterson.

The exceptions before us present the questions whether (1) the defendants were liable for the plaintiff's intestate's conscious suffering on the ground of gross negligence, and (2) there was sufficient evidence presented to establish a causal connection between negligence attributable to the defendants and the plaintiff's intestate's death.

1.  While it is often difficult to draw the line between ordinary and gross negligence, *Driscoll* v. *Pagano,* 313 Mass. 464, 468, it could not be said in this instance that the defendant Peterson was guilty of gross negligence.   That she was negligent in entering the intersection as she did could properly be found by the jury for she had ignored a stop sign, proper attention to which might have prevented the accident.   See, e.g., *Salvato* v. *DiSilva Transp. Co. Inc.* 329 Mass. 305, 310.   At the same time she was not chargeable with ''that high degree of culpability and indifference to duty that is the essential characteristic of gross negligence.''   *Driscoll* v. *Pagano,* 313 Mass. 464, 468.   *Altman* v. *Aronson,* 231 Mass. 588, 591–592.   Her speed, while greater than that of the car which struck her, was not shown to be excessively high.   See *Burke* v. *Cook,* 246 Mass. 518, 521–522, and cases cited; *Kohutynski* v. *Kohutynski,* 296 Mass. 74, 77–78, and cases cited.   There was lacking evidence of a heedless and palpable violation of her legal duty respecting the rights of her passenger or of the owner and operator of the car with which she was in contact.   Cf. *Parker* v. *Moody,* 274 Mass. 100; *White* v. *Lewis,* 305 Mass. 450.   Applying the standards of *Lynch* v. *Springfield Safe Deposit & Trust Co.* 294 Mass. 170, 172, there is doubt that she was deliberately, as opposed to carelessly, inattentive; that she voluntarily incurred an obvious risk; that she was impatient of reasonable restraint; or that she persisted in a palpably negligent course of conduct over an appreciable period of time.   Her act of negligence cannot, it seems to us, be escalated into something which it was not.   We thus conclude that it was error not to direct verdicts on the counts which alleged gross negligence of the defendants.

2.  We consider the problem of causal connection or the lack of it between the accident and the plaintiff's intestate's death and conclude that such causation could be found on the evidence.   The intestate, a sixty-three year old woman with a history of arteriosclerotic disease, sustained head and other injuries as a result of being thrown to the pavement from the car driven by the defendant Peterson in the

accident.   She was diagnosed at the hospital as having a questionable myocardial infarction, multiple contusions and abrasions, cerebral concussion, and questionable epidural hematoma.   The cause of her death was assigned as ''hemorrhage of brain'' and she died within hours of the accident.   All of these factors combine to bring this case within the compass of *Wallace* v. *Ludwig,* 292 Mass. 251, 256, and cases cited, which hold a wrongdoer responsible for the harmful results of the combined effects of his wrongful act and a preëxisting disease or condition.

3.   It follows that the defendants' exceptions to the denial of their motion for the directing of verdicts as to counts three and six are sustained, and as to counts one and four are overruled.

*So ordered.*