New England Foundation Co. Inc. *v.* American Mutual Liability Ins. Co.

*Stetson* v. *French,* 321 Mass. 195, 199; *Samia* v. *Central Oil Co. of Worcester,* 339 Mass. 101, 112. The evidence showed only that Nellie C. Kelly was living with Catherine and that Catherine had in her possession an unexecuted written instrument which recited a pledge to convey three acres to Thomas. This evidence was insufficient to support a finding of a fiduciary relationship.

Since there is no contention that Catherine used to her own advantage and to the disadvantage of her mother any information confidentially imparted to her by her mother, there can be no constructive trust imposed on that hypothesis.

The final decree must be reversed. A new final decree is to be entered dismissing the bill.

*So ordered.*

———

New England Foundation Co., Inc. *vs.* American Mutual Liability Insurance Company & another.

Suffolk. March 4, 1970. — July 13, 1970.

Present: Spalding, Kirk, Reardon, & Quirico, JJ.

*Insurance,* Rating. *Corporation,* Ownership. *Equity Pleading and Practice,* Case stated, Appeal. *Words,* "New owners."

Upon appeal from the final decree in a suit in equity heard upon a statement of facts constituting a case stated, this court could draw inferences of fact in the absence of any provision otherwise in the statement, and could decide the case unaffected by purported findings of fact of the trial judge. [158–159]

Under a plan filed by an insurance rating bureau governing the rates which member insurers could charge insured employers for workmen's compensation insurance policies, and providing that the premiums therefor should be at a manual rate, so called, until modified in accordance with an incurred experience factor, but that such factor would not apply "if the ownership of an existing corporation has been changed so that the majority interest is vested in a group of new owners who individually held an ownership interest in the corporation prior to the change of ownership, which interests collectively were less than $33\frac{1}{3}\%$," and where it appeared that originally all outstanding shares of voting com-

mon stock of an insured corporation were owned by three persons, the first person owning 19.5% thereof, the second person owning 50.5% thereof, and the third person owning 30.0% thereof, and that after an increase in the total number of shares outstanding the first person owned 50.46% thereof, the second person owned 31.08% thereof, and the third person owned 18.46% thereof, it was held that the first person qualified alone as a "group of new owners" and that there had been a change of ownership so that the corporation was entitled to the benefit of the manual rate without modification by the incurred experience factor. [161–163]

BILL IN EQUITY filed in the Superior Court on October 17, 1963.

The suit was heard by *Mitchell, J.*

*Walter J. Skinner* for the plaintiff.

*Herbert P. Wilkins* for Massachusetts Workmen's Compensation Rating and Inspection Bureau (*Richard M. Molloy*, for American Mutual Liability Insurance Company, with him).

QUIRICO, J. This is a bill in equity under G. L. c. 231A brought by the New England Foundation Co., Inc. (Foundation), a Delaware corporation, against the American Mutual Liability Insurance Company (American Mutual) and the Massachusetts Workmen's Compensation Rating and Inspection Bureau (Bureau). It seeks a determination of the rate of premium properly chargeable by American Mutual on policies of workmen's compensation insurance issued by it to Foundation, and an order for repayment of any payment previously made by Foundation to American Mutual in excess of the premiums which were properly chargeable.

The case was submitted to a judge of the Superior Court for decision on a statement of agreed facts constituting a case stated. After hearing, the trial judge filed a document entitled, "Findings of Fact, Declarations of Law, and Order for Decree," and then entered a final decree dismissing the bill. The case is before us on Foundation's appeal from the final decree.

Since the agreement does not provide otherwise, we are "at liberty to draw from the facts and documents stated in

358 Mass. 157                                    159

New England Foundation Co. Inc. *v.* American Mutual Liability Ins. Co.

the case any inferences of fact that might have been drawn therefrom at a trial." G. L. c. 231, § 126. *Rossi* v. *School Comm. of Everett,* 354 Mass. 461, 463. The scope of our review is not limited or otherwise affected by the purported findings of fact of the trial judge. *Rogers* v. *Attorney Gen.* 347 Mass. 126, 130–131.

The first issue to be decided is the rate of insurance premiums properly chargeable on certain workmen's compensation insurance policies (policies) issued by American Mutual to Foundation. We state the facts bearing on that issue as they appear in the case stated. On January 1, 1959, the New England Foundation Company, Incorporated (Company), a Massachusetts corporation, was engaged in business which included that of foundation contractor. It was insured by American Mutual under workmen's compensation insurance policies (also called policies) for the calendar years 1959, 1960 and 1961.

On January 29, 1959, there was an increase in the total number of its outstanding voting common stock and some changes in the number of shares of such stock held by each of its three stockholders. The shares held by each stockholder before and after these changes were as follows:

| | Before 1–29–59 | | After 1–29–59 | |
| --- | --- | --- | --- | --- |
| *Stockholders* | *Number of Shares* | *Percentage of Ownership* | *Number of Shares* | *Percentage of Ownership* |
| Albert C. Titcomb | 39 | 19.5% | 164 | 50.46% |
| Clement Titcomb | 101 | 50.5% | 101 | 31.08% |
| Mildred Titcomb | 60 | 30.0% | 60 | 18.46% |
| Totals | 200 | 100.0% | 325 | 100.00% |

The Company is the majority shareholder of Foundation which came into existence on April 15, 1959. Foundation,

the successor in interest to the Company in carrying on the business of foundation contractor, was insured by American Mutual under policies issued it for the policy years commencing April 15, 1959, April 15, 1960, and April 15, 1961.

Neither Foundation nor the Company was an assigned risk, so called, under G. L. c. 152, § 65A, during any of the years involved in this case.

American Mutual was a member of the Bureau. The premiums which it could charge on the policies issued to the Company and Foundation (together herein called the Companies) were governed by rates and an experience rating plan which the Bureau had filed on behalf of all of its members and which had been approved by the Commissioner of Insurance. The premiums were to be at the manual rate, so called, unless and until modified in accordance with the provisions of the experience rating plan. By the application of the rating plan to the incurred experience of the Company, the premium payable by it on January 1, 1959, was subject to a modification factor of 1.94 which means that it was 1.94 times the manual rate. American Mutual charged both Companies premiums computed at the 1.94 factor for 1959.

The experience rating plan included a provision in Section III, Rule 11 (d), to the effect that the incurred experience modification factor would not apply "[i]f the ownership of an existing corporation has been changed so that the majority interest[1] is vested in a group of new owners who individually held an ownership interest in the corporation prior to the change of ownership, which interests collectively were less than $33\frac{1}{3}\%$." Prior to June 3, 1959, the Companies requested the Bureau to withdraw the experience rating modification of 1.94 on the ground that there had been a change of ownership within the meaning of Rule 11 (d). The Companies' representatives conferred with the Bureau staff on the request on June 3, 1959. On

---

[1] Section II, Rule 3 of the plan states, "In the case of a corporation which has issued voting stock, the 'majority interest' shall mean the majority of the issued voting stock."

358 Mass. 157 161

New England Foundation Co. Inc. *v.* American Mutual Liability Ins. Co.

July 8, 1959, the Bureau staff advised counsel for the Companies by letter that their request was denied.  The ground for denial as stated in the letter was that since "the group of owners who held the voting stock prior to the recapitalization were the three individuals . . . [who] owned all of the voting stock after the re-capitalization there is no 'group of new owners' and therefore, the prior experience of the corporation should be used in future ratings."  On July 24, 1959, the Companies requested a review of that decision by the Rates and Manual Committee of the Bureau.  The committee granted the Companies a hearing on September 16, 1959, and by letter of the next day it notified the Companies that it affirmed the prior staff ruling.

The Companies took no further action with reference to the rate of premiums until February 28, 1961, when their attorney wrote to the Bureau and requested that it review its decision of May 8, 1959, denying Foundation the benefit of the manual rate.  By letter of March 20, 1961, the Bureau informed the Companies that the earlier decision was affirmed.  On April 13, 1961, the Companies requested a hearing on the same matter before the Commissioner of Insurance.  After some intervening letters the commissioner informed them on July 18, 1961, that there was no provision of law for such a hearing, and none was held.  No other action was taken by the Companies thereon, except for the periodic payment of premiums billed and the receipt of dividends paid them by American Mutual, until May 2, 1963, when the Companies, through counsel, again corresponded with the Bureau and the commissioner about the premiums charged.

On October 17, 1963, the Foundation filed its bill for declaratory relief seeking in part an interpretation of Rule 11 (d).  The trial judge concluded there had not been a change in ownership within the meaning of Rule 11 (d). He placed reliance "on the fact that the same group owned a majority stock interest in . . . [plaintiff] before the recapitalization as after."  We are not bound by that conclusion, and we do not agree with it.  Before January 29, 1959,

Clement Titcomb held the majority interest with resulting control of the Company; and Albert Titcomb had an interest which was "less than $33\frac{1}{3}\%$." After the changes of January 29, 1959, Albert Titcomb held the majority interest with the resulting control of the Company. The right to control the Company thereby shifted just as effectively as though a person or persons not previously stockholders had acquired a majority of the voting stock. We do not construe Rule 11 (d) as requiring the entry of persons not previously stockholders in order to have a "group of new owners" of a corporation. One holding less than a $33\frac{1}{3}\%$ of the voting stock of a corporation who then acquires enough additional voting stock to hold a majority interest is as much a "new owner" of the corporation as would be a stranger purchasing a majority interest.

Although Rule 11 (d) refers to a change of ownership "so that the majority interest is vested in a *group of new owners*" (emphasis supplied), we hold that Albert C. Titcomb alone qualifies as such a "group of new owners" since he also meets the other requirements of the rule. A majority of the voting stock of a corporation is as effective an instrument for the control of the corporation when held by an individual as when it is held by a group of persons.

The defendants argue that unless we construe the words "a group of new owners" in Rule 11 (d) as requiring the inclusion therein of a person or entity not previously a stockholder there would be insoluble problems of determining whether a change of ownership is a material one rather than merely a nominal one. We do not understand how this problem would be eliminated by requiring the introduction of a new name in the stockholder lists. Stock may be and often is held in the names of nominees, including the practice commonly referred to as "street form." In any event there is nothing in the statement of agreed facts to indicate or to permit the inference that any of the stock of the Company is being held by any person who is not its actual owner.

We hold that because of the change of ownership of the Company on January 29, 1959, it was entitled to the benefit

of the manual rates, without modification for incurred experience, from that date through December 31, 1960; and that its subsidiary, Foundation, was entitled to the same rates for the period from April 15, 1959, when it started business, through December 31, 1960. Both Companies became subject to appropriate modification factors during the years 1961 and 1962. The following is a comparison of the modification factors which American Mutual applied in billing the Companies and those which we hold it should have applied:

| Policy Year | Modification Factor Used | Modification Factor Which Should Have Been Used |
|---|---|---|
| 1959 | 1.94 | None |
| 1960 | 1.98 | None |
| 1961 | 1.51 | 1.33 |
| 1962 | 1.72 | 1.92 |

The net result of the action of American Mutual in billing the Companies for premiums on the basis of modification factors other than those applicable is that the Companies have paid it $8,456.95 more than the premiums due for the four years listed.

The statement of agreed facts includes the following provision: "25. If the change of ownership effective January 29, 1959, was a change meeting the standards of Section III, Rule II (d) [*sic*], of the experience rating plan, then the Company and Foundation are entitled to return of excess premium paid in the amount of $8,456.95." We have concluded that the change of ownership which occurred on January 29, 1959, did meet the standards of Rule 11 (d). Accordingly, giving effect to the agreement of the parties, the final decree is reversed and a new decree is to be entered ordering American Mutual to pay the sum of $8,456.95 to the Company and Foundation. It is unnecessary for us to consider the defences of laches and voluntary payment.

*So ordered.*