GERALD S. COLELLA & another *vs.* STATE RACING
COMMISSION.

Suffolk. September 15, 1971. — October 12, 1971.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & BRAUCHER, JJ.

*Racing. Regulation. Constitutional Law,* Police power, Equal protec-
tion of the laws, Due process of law, Freedom to contract,
Delegation of powers, Racing. *Equity Pleading and Practice,* Case
stated, Appeal.

Upon appeal from the final decree in a suit in equity heard upon a
statement of facts constituting a case stated, this court could
decide the case unaffected by the decision of the trial judge or a
"Report of Material Facts" filed by him. [153]

A rule of the State Racing Commission specifying the fee which
should be paid by a jockey in any race "in the absence of special
agreement" between the owner and the jockey was within the
scope of the rule-making power delegated to the commission by
G. L. c. 128A, § 9, [155]; and was not shown by the record in a suit
in equity to be an impermissible application of the Legislature's
police power [155–156]; or to deny equal protection of the laws to
any owner of a horse because of the absence of regulation of fees
paid to racing meeting employees other than jockeys [156–157]; or
to interfere with the freedom of either an owner or a jockey to
contract [157–158]; or to deprive either of "bargaining posture"
without due process of law [157–158].

BILL IN EQUITY filed in the Superior Court on June 22,
1970.

The suit was heard by *DeSaulnier,* J.

*Daniel J. Johnedis,* Assistant Attorney General, for the
defendant.

*Edwin A. Nelson, Jr.,* for the plaintiffs.

QUIRICO, J. This is a bill under G. L. c. 231A, "to de-
termine the construction and validity" of G. L. c. 128A, § 9,
and of a rule made by the defendant pursuant thereto, and
also to determine "the rights, duties, status, and other legal
relations of the . . . [plaintiffs] under and in the light of"
said statute and rule.

The plaintiffs are an individual licensed owner of thorough-

bred racehorses and an association the members of which consist of either owners, owner-trainers or trainers of such horses.[1] The defendant is the "state racing commission" (Commission) existing under G. L. c. 6, § 48, and having all of the jurisdiction, power and authority given to it under G. L. c. 128A.

The case was submitted to a judge of the Superior Court for decision on a statement of agreed facts constituting a case stated. In this situation we are in a position to decide the questions of law involved unaffected by the decision of the trial judge. *Stamper* v. *Stanwood,* 339 Mass. 549, 551. The fact that the judge filed a document, entitled "Report of Material Facts," in which he adopted the statement of agreed facts does not limit or otherwise alter the scope or standard of our review of the case. *Rogers* v. *Attorney Gen.* 347 Mass. 126, 130–131. *New England Foundation Co. Inc.* v. *American Mut. Liab. Ins. Co.* 358 Mass. 157, 159. *Tucci v. DiGregorio,* 358 Mass. 493, 494.

We summarize the facts to which the parties have agreed, but only to the extent necessary for this decision. The Commission issued a license for the year 1970 to the individual plaintiff as the owner of horses participating in horse racing in this Commonwealth.[2] General Laws c. 128A, § 9, as amended through St. 1935, c. 454, ·§ 5, provides in part that "[t]he commission shall have full power to

---

[1] The bill describes the association as follows: The plaintiff, "Horsemen's Benevolent and Protective Association, is a charitable corporation duly organized and existing under the laws of the state of Rhode Island, which corporation conducts its affairs in the United States and other countries by unincorporated regional divisions of which the New England Division is the representative in the Commonwealth of Massachusetts." If the bill intends that the Massachusetts unincorporated association· rather than the Rhode Island corporation is the plaintiff, the named individual may be the only proper plaintiff. Such an unincorporated association is not a legal entity known to the law, and none of its members has joined as fairly representative of all of the members. *Pickett* v. *Walsh,* 192 Mass. 572, 589. *Reynolds* v. *Davis,* 198 Mass. 294, 300–301. *Donahue* v. *Kenney,* 327 Mass. 409, 412. *McCormack* v. *Labor Relations Commn.* 358 Mass. 682, 685.

[2] General Laws c. 128A, § 9A, as appearing in St. 1956, c. 454, provides in part that "the rules, regulations and conditions prescribed by the commission under section nine may provide . . . for the licensing at reasonable and uniform fees of owners, trainers, jockeys and stable employees at horse tracks." The Commission made such provision in its rules. See Rules of Horse Racing of May 1, 1967, Rules 367 through 382A.

prescribe rules, regulations and conditions under which all horse or dog races at horse or dog racing meetings shall be conducted in the commonwealth." On May 1, 1967, the Commission prescribed and published a comprehensive set of rules entitled, "Rules of Horse Racing." Rule 281 thereof provided that "Jockey's riding fees, in the absence of a contract shall be as follows" and then specified the fees which ranged from a low of $10 to a high of $50, depending on the amount of the purse for the race and the order or position in which the horse finished the race. On April 15, 1970, the Commission adopted an amendment to the rule to take effect on April 20, 1970. The rule as amended read as follows:

"281. The fee to a jockey in all races shall be, in the absence of special agreement, as follows:

| Purse | Winning Mount | Second Mount | Third Mount | Losing Mount |
|---|---|---|---|---|
| $400. and under | $27. | $18. | $16. | $15. |
| 500. | 30. | 20. | 17. | 15. |
| 600. | 36. | 22. | 17. | 15. |
| 700.–900. | 10% of Win Purse | 25. | 22. | 19. |
| 1,000.–1,400. | 10% of Win Purse | 30. | 25. | 20. |
| 1,500.–1,900. | 10% of Win Purse | 35. | 30. | 25. |
| 2,000.–3,400. | 10% of Win Purse | 45. | 35. | 30. |
| 3,500.–4,900. | 10% of Win Purse | 50. | 40. | 30. |
| 5,000. and up | 10% of Win Purse | 55. | 45. | 35. " |

At a hearing held by the Commission on April 8, 1970, on the proposed amendment to its Rule 281, the plaintiffs raised the issue of the constitutionality of G. L. c. 128A, § 9, and of Rule 281 in its form before the amendment and as proposed by the amendment.

The judge of the Superior Court decided that "Chapter 128A is constitutional" and that "Rule 281 as amended and adopted by the State Racing Commission is arbitrary, unreasonable and unconstitutional, and . . . should be declared null and void." The Commission appealed from a final decree to that effect. The plaintiffs did not appeal. The plaintiffs' brief makes no argument that G. L. c. 128A,

§ 9, is unconstitutional, and it argues only the alleged unconstitutionality or other invalidity of Rule 281. We conclude that the plaintiffs have therefore waived the contention originally made in their bill as to the unconstitutionality of § 9.

It appears from the case stated that the Commission complied fully with the procedural requirements of G. L. c. 30A, §§ 2 through 5, for the adoption of regulations in connection with amended Rule 281. The plaintiffs do not argue otherwise in their brief.

We thus start our consideration of the case with a valid delegation by the Legislature to the Commission of "full power to prescribe rules, regulations and conditions under which all horse or dog races at horse or dog racing meetings shall be conducted in the commonwealth." The only questions are whether amended Rule 281 is within the scope of the rule-making power thus delegated to the Commission, and whether it is constitutional. The burden of proof with respect to each question is on the plaintiffs.

The business of running horse or dog racing meetings accompanied by pari-mutuel betting on the speed or ability of the racing animals was first made lawful in this Commonwealth by G. L. c. 128A, inserted by St. 1934, c. 374, § 3. By that statute the Legislature established the overall plan under which such meetings could be licensed and conducted, but it did not attempt to legislate on all of the details of the operation of the meetings. Instead it used the broadest of language possible in § 9 to delegate "full power" to the Commission to prescribe rules, regulations and conditions for the conduct of such meetings. We hold that Rule 281 relating to fees payable to jockeys "in the absence of special agreement" is within the scope of the rule-making power delegated to the Commission by the Legislature. See *Bay State Harness Horse Racing & Breeding Assn. Inc.* v. *State Racing Commn.* 342 Mass. 694, 699–700.

The test of the constitutionality of Rule 281 is the same which would be applied to a statute. The rule "stands on the same footing as would a statute, ordinance, or by-law."

*Druzik* ·v. *Board of Health of Haverhill,* 324 Mass. 129, 138. *Silverman* v. *Board of Registration in Optometry,* 344 Mass. 129, 134, n. 2. See *Commonwealth* v. *Sargent,* 330 Mass. 690, 692. Basically the question is whether such a rule, if enacted as a statute, would be within the police power of the Legislature. Constitution of the Commonwealth, Part II, c. 1, § 1, art. 4. "All rational presumptions are made in favor of the validity of every legislative enactment. Enforcement is to be refused only when it is in manifest excess of legislative power. . . . It is only when a legislative finding cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it that a court is empowered to strike it down. . . . If the question is fairly debatable, courts cannot substitute their judgment for that of the Legislature." *Druzik* v. *Board of Health of Haverhill, supra,* 138–139. *Paquette* v. *Fall River,* 338 Mass. 368, 376. *Massachusetts Soc. for the Prevention of Cruelty to Animals* v. *Commissioner of Pub. Health,* 339 Mass. 216, 228. *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 422.

Since the question is presented to us on a case stated, the plaintiffs have the burden of proving on that record the absence of any conceivable grounds upon which Rule 281 may be upheld. The record does not establish the absence of such grounds. This deficiency cannot be overcome by any argument that the record does not affirmatively show facts upon which the rule may be supported. *Mile Road Corp.* v. *Boston,* 345 Mass. 379, 382–383 (app. dism. 373 U. S. 541). "The presumption of constitutionality must prevail in the absence of some factual foundation specifically set forth in the record for overthrowing the statute." *Commonwealth* v. *Leis,* 355 Mass. 189, concurring opinion, p. 200 *Pinnick* v. *Cleary, ante,* 1, concurring opinion, pp. 32-33.

The plaintiffs make the specific argument that Rule 281, as amended, is unconstitutional for several reasons which, fairly summarized, seem to be that the rule (a) denies them

equal protection of the laws because the fees payable to racing meeting employees other than jockeys are not regulated, (b) denies them equal protection of the laws because it abridges or interferes with their freedom of contract, and (c) deprives them of their property, viz. their "bargaining posture," without due process of law. The validity of these arguments must be considered solely on the basis of what is contained in the case stated.

The case stated is silent as to the factual situation against which the Commission adopted amended Rule 281. The presumption of validity permits a conclusion that it was conceivable that grounds existed which warranted the singling out of jockeys' fees for regulation by rule. See *Lindsley* v. *Natural Carbonic Gas Co.* 220 U. S. 61, 78–79. An example of a conceivable ground for such a rule could be the prevalence of disputes between jockeys and owners over riding fees, where the amounts of such fees are not agreed upon before a race, and the Commission's desire to minimize the occasion for such disputes. On this silent record, it is not open to the plaintiffs to argue the contrary.

The other arguments relating to alleged deprivation of property and interference with freedom of contract must be judged by a consideration of the language of Rule 281 itself and of our interpretation of the rule. Testing the rule by the same standards which we would apply to a statute, "[all] rational presumptions are made in favor of . . . [its] validity . . . and . . . [i]t will not be declared void unless it is impossible by any reasonable construction to interpret its provisions in harmony with the Constitution." *Perkins* v. *Westwood*, 226 Mass. 268, 271, and cases cited therein. *Commonwealth* v. *S. S. Kresge Co.* 267 Mass. 145, 148.

Rule 281 recognizes the right of a racehorse owner and a jockey to negotiate and enter into a "special agreement" fixing the amount of the fee to be paid the jockey for riding the horse in a race. If they enter into such an agreement, the fee thus fixed will be payable to the jockey. If the owner

engages or permits the jockey to ride his horse in a race without such an agreement as to the jockey's fee, then the fee payable to the jockey is governed by the provisions of Rule 281. We construe the words "special agreement" as used in the rule to mean an express agreement with respect to the fee. The owner is not compelled to hire the jockey to ride a horse for the fee fixed by the rule, and the jockey is not compelled to hire himself out to the owner for such a fee. They are free, if they wish, to agree on a fee which is lower or higher than that stated in the rule, or not to agree to anything. As thus construed the rule involves no abridgement or interference with the freedom of either the owner or jockey to contract. Neither does it diminish or take away the bargaining posture of either the owner or the jockey. It therefore violates no constitutional rights of the plaintiffs.

We note that a virtually identical rule was held to be constitutional in the case of *Chicago Div. of the Horsemen's Benevolent & Protective Assn.* v. *Illinois Racing Bd.* 133 Ill. App. 2d 386, 390–391. The record before that court appears to include an agreement of the parties concerning the meaning of the words "special agreement." We have no such agreement in the present case, and we therefore construe the words on the basis of our more limited record.

In *Donovan* v. *Eastern Racing Assn. Inc.* 324 Mass. 393, 396, we said that pari-mutuel betting had been defined as "a form of betting on horses in which those who bet on the winning horse share the total stakes, less a small per cent to the management." [3] In *Selectmen of Topsfield* v. *State Racing Commn.* 324 Mass. 309, at 315, we said "Horse racing with the pari-mutuel system of betting . . . is a form of gambling which has been legalized by the Legislature but which because of the nature of the business can be abolished

---

[3] This "small per cent to the management" is 7½% for running horse racing meetings. In addition the total amounts bet are further reduced before payment to bettors by reason of payments to the Commonwealth. The combined total of the deductions for the management and the Commonwealth are 15% for running horse racing meetings. G. L. c. 128A, § 5, as amended through St. 1969, c. 807, §3.

at any time that the Legislature may deem proper for the safeguarding and protection of the public welfare." But for the legalization resulting from the enactment of G. L. c. 128A, the registering of bets on the speed of horses or dogs or the racing of horses for bets or stakes would constitute a crime. G. L. c. 271, §§ 17 and 31. While c. 128A removed the stigma of illegality from the operation, it did not remove all of the many perils, pitfalls, temptations and traps for the unwary, nor the occasions for corruption for the participants, all of which are inherent in any gambling operation of such proportions. The Legislature recognized the existence of these dangers unless the racing meetings were strictly governed and controlled by rules covering the many details which the statute did not cover. It contemplated that the Commission would be best equipped to supervise the racing operations, and it gave the Commission the very broad powers necessary to accomplish the purpose.

It is not open to this court to question the wisdom of the rules adopted by the Commission so long as they are within the limits of the power delegated to it. "Judicial inquiry does not extend to the expediency, wisdom or necessity of the legislative [or Commission's] judgment for that is a function that rests entirely with the law-making [or rule-making] department." *Slome* v. *Chief of Police of Fitchburg*, 304 Mass. 187, 189. *Pinnick* v. *Cleary, ante,* 1, concurring opinion, p.33.

We hold that the Commission had the power and authority to adopt Rule 281 in its amended form, and that the rule is not unconstitutional or otherwise invalid. The final decree is reversed and a new decree is to be entered in accordance herewith.

*So ordered.*