LUCA FIORAVANTI *vs.* STATE RACING COMMISSION.

Suffolk.   March 20, 1978. — April 28, 1978.

Present: KEVILLE, ARMSTRONG, & BROWN, JJ.

*Racing. Regulation. Administrative Agency,* Findings, Judicial review. *Constitutional Law,* Racing.

There were sufficient findings of fact supported by substantial evidence in a proceeding before the State Racing Commission to warrant conclusions that a horse trainer had violated rules of the commission, as reasonably interpreted by it, prohibiting possession of hypodermic needles or certain medications within the racing grounds where horses are kept, and making the trainer the insurer of the condition of any horse he enters in a race. [301–304]

A rule of the State Racing Commission providing that a horse trainer is the insurer of the condition of any horse he enters in a race is rationally designed to provide maximum protection against illicit administration of drugs to race horses, and was sustained against a challenge on due process grounds by a horse trainer held responsible thereunder for the condition of a horse to which prohibited medication had been administered. [304–305]

CIVIL ACTION commenced in the Superior Court on June 22, 1977.

The case was heard by *Sullivan,* J.

*Frederick J. Conroy (Joseph P. Collins* with him) for the plaintiff.

*Terence P. O'Malley,* Assistant Attorney General, for the defendant.

KEVILLE, J. Luca Fioravanti appeals from a judgment affirming, under G. L. c. 30A, § 14, a decision of the State Racing Commission (commission) suspending his trainer's license for one year. On April 28, 1977, a horse (Gentius) trained by Fioravanti placed second in the seventh race at Suffolk Downs. Following the race a routine urine sample was taken and sent to a laboratory for analysis.

The commission's chemist reported that the analysis revealed the presence of a drug, apomorphine. At the commission's request the State police searched the area in which Gentius was stabled. In a tack room assigned to Fioravanti, a cardboard box was found containing hypodermic needles and syringes.

A hearing was held before the board of stewards at Suffolk Downs at which Fioravanti appeared with counsel. The stewards suspended Fioravanti's license for violation of Rules 519, 524 and 607 of the Rules of Horse Racing of the State Racing Commission. Rule 519 penalizes those who administer or conspire to administer prohibited medication to a horse before a race. Rule 524 provides that no person within the racing grounds where horses are kept shall have "in or upon the premises which he occupies or has the right to occupy, or in his personal property or effects" hypodermic needles or prohibited medication. Rule 607 provides that a trainer is the absolute insurer of the condition of any horse he enters regardless of the acts of third parties. The stewards referred the case to the commission.

The commission held a hearing at which Fioravanti appeared with counsel. The commission's chemist, a State policeman who had observed the taking of the urine sample, a State police detective who had searched the area at the track assigned to Fioravanti and the State veterinarian at Suffolk Downs all testified and were thoroughly cross-examined by Fioravanti's counsel. In addition, Fioravanti presented testimony through his own chemist and took the stand himself. The commission found that the urine sample taken from Gentius contained apomorphine and that apomorphine is a prohibited drug which affects the speed of a horse. The commission found that the sample was observed and controlled at all times by State officials and that hypodermic needles and syringes were found in a tack room assigned to Fioravanti. The commission found a violation of Rule 524 which, the commission ruled, forbids the presence of

hypodermic syringes in any area which has been assigned to a trainer and makes the trainer solely responsible for any violation. The commission also found that Fioravanti had violated Rule 607 because he had "assumed the complete responsibility for the improper condition of the horse." On Fioravanti's petition to the Superior Court for review of the commission's order the ruling of the commission was affirmed. Fioravanti argues that the commission's finding that he violated Rule 524 was based upon insufficient findings of fact and upon an error of law. He challenges the finding that he violated Rule 607 as not having been based on substantial evidence, not supported by sufficient findings of fact and being in violation of his constitutional rights.

Fioravanti first contends that the finding that he violated Rule 524 was based upon insufficient findings of fact. See *Maryland Cas. Co.* v. *Commissioner of Ins.,* 372 Mass. 554, 566–567 (1977). While he is correct in his assertion that a decision of the commission must be accompanied by a statement of reasons supporting it (G. L. c. 30A, § 11[8]; *Save the Bay, Inc.* v. *Department of Pub. Util.,* 366 Mass. 667, 687 [1975]), the commission "need not set forth a lengthy statement of factual and legal conclusions as long as its decision contains adequate reasons to allow the court to exercise its function of appellate review." *Maddocks* v. *Contributory Retirement Appeal Bd.,* 369 Mass. 488, 497 (1976). See *Save the Bay, Inc.* v. *Department of Pub. Util., supra.*

The commission's findings concerning violation of Rule 524 are adequate to permit review. The commission found that the hypodermics and syringes were discovered in an area assigned to Fioravanti. This finding was sufficient to establish a violation of that rule. Contrary to Fioravanti's argument, the commission was not required under Rule 524 to find that he was present at the track when the prohibited items were found. He argues for the first time on appeal that the commission made no finding that the hypodermics found could be used for injection of a prohib-

ited substance into a horse. Fioravanti cannot prevail here on an argument not made before the commission. *Unemployment Compensation Commn.* v. *Aragon,* 329 U.S. 143, 154–155 (1946). 3 Davis, Administrative Law § 20.06 (1958). The failure of the commission to make further factual findings is warranted by its interpretation of Rule 524 as holding the trainer responsible for the presence of prohibited articles in areas assigned to him without regard to his knowledge of their presence.

The commission's interpretation of Rule 524 was not arbitrary, unreasonable or inconsistent with the plain language of the rule. An agency's interpretation of its own regulation is entitled to great weight. See *Finkelstein* v. *Board of Registration in Optometry,* 370 Mass. 476, 478 (1976), and cases cited. In reviewing the commission's interpretation of its own rules, we must give due weight to the commission's experience, technical competence, and specialized knowledge in the field of horse racing. *Imprescia* v. *State Racing Commn., post* 839 (1978). The court should be slow to decide that a public board has acted unreasonably or arbitrarily and should search for some ground which reasonable men would regard as a proper basis for the agency's action. *Cotter* v. *Chelsea,* 329 Mass. 314, 318 (1952). *Cliff* v. *Board of Health of Amesbury,* 343 Mass. 58, 62 (1961). The commission could reasonably have determined that prohibiting the mere presence of instruments which could be used to administer prohibited substances was the best way to prevent illicit use of those substances. Such an interpretation of Rule 524 is consistent with the language of the rule.

The commission made sufficient findings of fact to support its ruling that Fioravanti violated Rule 607. As stated earlier, the commission found that the urine sample was taken from the horse Gentius, that the sample was observed and controlled at all times by State officials, and that the sample contained apomorphine. The commission also found that apomorphine is a prohibited drug

which affects the speed of a horse. These findings adequately cover all material issues relating to Fioravanti's violation of Rule 607. Not having raised the issue at the commission hearing, Fioravanti cannot now prevail in arguing for the first time that the commission failed to make a finding that he entered the horse Gentius in the race on April 28, 1977.

Fioravanti argues that no substantial evidence was introduced at the commission hearing to support a finding that he violated Rule 607. See G. L. c. 30A, § 14 (7) (e). Substantial evidence to support an agency decision means "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6), as amended through St. 1975, c. 817, § 1. In determining whether the commission's findings are based upon substantial evidence, the court must give due weight to the commission's expertise and to the discretionary authority conferred upon it by the Legislature. *Almeida Bus Lines, Inc.* v. *Department of Pub. Util.*, 348 Mass. 331, 342 (1965). *Bournewood Hosp., Inc.* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 303, 317 (1976). The court may not displace the commission's choice between fairly conflicting views. *Labor Relations Commn.* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971). In applying these standards, we must consider that the Legislature in the broadest possible language delegated full power to the commission to prescribe the rules of horse racing. See *Colella* v. *State Racing Commn.*, 360 Mass. 152, 155 (1971).

There was substantial evidence to support the commission's findings. It was justified in finding that the urine sample in which apomorphine was found came from the horse Gentius. The State trooper who watched as the sample was taken and the State veterinarian who received the sample from the State trooper and sealed the sample with an identification slip testified as to the procedures followed. The only evidence suggesting possible misidentification of the sample was the failure to com-

plete a second, duplicative document evidencing identification. The commission allowed full discussion of the issue and reasonably determined the validity of the sample. Similarly, the testimony of the State veterinarian, based upon a medical school textbook, that apomorphine affects the central nervous system of a horse was substantial evidence supporting the commission's finding that apomorphine is a prohibited drug.

The commission's finding that the urine sample contained apomorphine was based upon its choice of conflicting opinions offered by the State chemist and a research chemist called by Fioravanti. That decision was for the commission. *Labor Relations Commn.* v. *University Hosp., Inc.,* 359 Mass. at 521. *Duato* v. *Commissioner of Pub. Welfare,* 359 Mass. 635, 641 (1971). Since Fioravanti failed to object at the hearing before the commission that there was insufficient foundation for the introduction of the State chemist's opinion, he may not raise that argument for the first time on appeal. *United States* v. *Tucker Truck Lines, Inc.,* 344 U.S. 33, 36–37 (1952). Davis, Administrative Law, *supra.*

Fioravanti claims that the invocation of Rule 607 has denied his constitutional right to due process. Other jurisdictions have considered the constitutionality of rules making trainers the absolute insurers of the horses they enter in races. A majority have upheld an absolute insurer provision. *Sandstrom* v. *California Horse Racing Bd.,* 31 Cal. 2d 401, 407, cert. denied, 335 U.S. 814 (1948). *Morris* v. *West Va. Racing Commn.,* 133 W. Va. 179, 201–202 (1949). *O'Daniel* v. *State Racing Commn.,* 37 Ohio St. 2d 87, 91–92 (1974). *Jamison* v. *State Racing Commn.,* 84 N.M. 679, 680–681 (1973). Contra, *Brennan* v. *Illinois Racing Bd.,* 42 Ill. 2d 352, 354–358 (1969). See *Mahoney* v. *Byers,* 187 Md. 81, 87 (1946). See generally Annot., 52 A.L.R.3d 206 (1973).

In establishing racing regulations the commission exercises the police power of the State delegated to it by the Legislature. *Landers* v. *Eastern Racing Assn., Inc.,* 327

Mass. 32, 43, 46 (1951). *Colella* v. *State Racing Commn.*, 360 Mass. at 156. In testing the constitutionality of a regulation exercising that power, all rational presumptions are made in favor of the validity of the regulation. It will be struck down only if it "cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it." *Ibid.*

Rule 607 rests on a rational basis. Horse racing accompanied by gambling is particularly susceptible to fraud and corruption. The Legislature has recognized these dangers and has given broad powers to the commission to control racing operations strictly. *Colella* v. *State Racing Commn.*, *supra* at 159. Rule 607 is designed to provide maximum protection against the illicit administration of drugs to race horses. The rule may do injustice to a trainer innocent of wrongdoing; but it serves to protect the public. In the interests of effective regulation the ultimate responsibility for the condition of a race horse must be clearly established; and we cannot say that the commission was unreasonable in placing that responsibility upon trainers. See *Morris* v. *West Va. Racing Commn.*, 133 W. Va. at 192.

*Judgment affirmed.*