BARRINGTON FAIR ASSOCIATION, INC. *vs.* STATE RACING COMMISSION. No. 88-P-173. June 15, 1989. *Moot Question. Practice, Civil,* Moot case. *State Racing Commission. Racing. License. Administrative Law,* Judicial review, Substantial evidence.

For purposes of testing whether substantial evidence supported the decision of the State Racing Commission to deny a horse racing license to Barrington Fair Association, Inc. (the "applicant"), it is necessary to consider only two of the grounds put forth by the commission: 1) the applicant was a front for persons who wished to remain unknown; and 2) the applicant's main purpose was not the encouragement of agriculture. The applicant had applied for a license to conduct horse races on ten days in September, 1987, at the Great Barrington Country Fair.

That fair had a long history — it began in 1841 — but had fallen on hard times in the early 1980's. There had been a bankruptcy proceeding, out of which ownership of the fair grounds (land and buildings) devolved

upon Great Barrington Country Fair, Inc. (the "land owner"), a newly organized Massachusetts business corporation. The applicant was organized as a nonprofit corporation, conformably with G. L. c. 180. A principal figure in the land owner was a Michael Abdalla, who also played a significant management role in the applicant.

After the racing commission issued its decision denying the license, the applicant sought judicial review under G. L. c. 30A, § 14. A judge of the Superior Court concluded that sufficient evidence had been brought before the racing commission to warrant its subsidiary findings which, in turn, supported the commission's decision. The applicant appealed, claiming that the commission decision distorted the record so as to reach, in arbitrary fashion, a predetermined result.

1. *Mootness.* Whether the applicant was entitled to a license in 1987 is now a moot question. Some of the grounds which the commission gave for denying the license, e.g., incompleteness of the application, are not likely to recur. The matter of the inherent inappropriateness of the applicant to conduct a racing meet at an agricultural fair is, however, capable of repetition, yet likely to evade review, since, in normal circumstances, the racing dates applied for will have come and gone before the process of judicial review has worked to a conclusion. We, therefore, consider that aspect of the case. See *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973); *Taunton Greyhound Assn.* v. *State Racing Commn.*, 10 Mass. App. Ct. 297, 298-299 (1980); *Umina* v. *Malbica*, *ante* 351, 354 (1989).

2. *Legal and factual support in the record for denial of a license.* The applicant bears the burden of establishing that there was no substantial evidence to support the commission's findings and conclusions. If there came before the commission evidence which a reasonable mind might accept to support the commission's decision, that decision, assuming it rests on a lawful footing, may stand. *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981); *Taunton Greyhound Assoc.* v. *State Racing Commn.*, 10 Mass. App. Ct. at 299.

(a) *Front for persons unknown.* When the statutory scheme which regulates horse racing in Massachusetts was substantially amended in 1978, instilling public confidence in the integrity of the sport was declared an objective of the revisions. St. 1978, c. 494, § 1. See *Catrone* v. *State Racing Commn.*, 17 Mass. App. Ct. 484, 490 (1984); *Perez* v. *State Racing Commn.*, 23 Mass. App. Ct. 268, 273 (1986). A sport so entwined with gambling as horse racing is peculiarly susceptible to corruption and, for that reason, has long been closely regulated. *Colella* v. *State Racing Commn.*, 360 Mass. 152, 159 (1971). In considering whether to issue a license to a corporate applicant, the commission may reasonably be interested in the reputations for honest dealing, gambling history, and police records of the corporation's officers, directors, and stockholders. See G. L. c. 128A, § 2(2). Naturally, promoters of horse races are likely to have a more vigorous interest in the handle than the horseflesh; i.e., they will be in

the business of operating legalized gambling. Having information about the backgrounds of the individuals involved with a potential licensee will assist the commission in making a judgment whether that licensee will run honest betting and races or take the public for a ride.

There was evidence that the president and treasurer of the applicant, Leo Kiley, a race track operator, was singularly uninformed about the operational details of the applicant's proposal for running the fair and the horse races. He did not know who was paying the applicant's lawyer. Kiley's ideas about who would run the pari-mutuel and supervise the racing were vague and at variance with the more specific details testified to by Abdalla, whose role avowedly was that of real estate operator. Abdalla had some history of operating an illegal gaming device at a race track and had also been closely identified with the Great Barrington fair operation which had gone into bankruptcy. Important investment in acquisition of the real estate had come through persons named McAuliffe, but there were overtones that they had acted as a conduit for the funds of others. This evidence warranted the commission's conclusory finding that the applicant "is a front for Michael Abdalla and/or other persons who wish to operate a racing meeting but who want to remain unknown." Courts, of course, do not substitute their judgment for the findings, determinations, and exercise of discretion of the administrative agency. *Landers* v. *Eastern Racing Assn.*, 327 Mass. 32, 35 (1951).

(b) *Encouragement or extension of agriculture.* Under G. L. c. 128A, § 3(*q*), as inserted by St. 1964, c. 686, § 1, an applicant for a license at an agricultural fair is required to satisfy the commission "that the main purpose of such fair or exhibition is the encouragement or extension of agriculture. . . ." At the time of the application and the hearing before the commission, Kiley resided in Marblehead, Charles Newcombe, the clerk of the applicant, lived in Lincoln, and another director, Gerald Cheevers, lived in North Andover. There was no evidence of an abiding interest by any of them in crops or animal husbandry. They were men of business, not the soil. That, surely, is not a character defect but, under the peculiar requirements of the statute, was a failing in an applicant for a license to run horse races at the Barrington Fair. The lease arrangement between the applicant and the fair ground owner permitted income from concessions, progams, and parking, among other things, to be funneled to the landlord and could reinforce the commission's doubts about the bona fides of the applicant's ostensible nonprofit mission.

As the reasons discussed support the exercise of the commission's discretion to deny a license to the applicant, we need not consider whether the record supported, as matter of law or fact, the other reasons cited by the commission for its action.

We have noted that the case is moot. The judgment is vacated, and a new judgment is to enter dismissing the action on the grounds of mootness.

*So ordered.*

*Ira H. Zaleznik* for the plaintiff.

*Alice E. Moore,* Assistant Attorney General, for the defendant.