Foxboro Harness, Inc. *vs.* State Racing Commission
& another.[1]

No. 95-P-982.

Suffolk. November 6, 1996. - January 23, 1997.

Present: Warner, C.J., Armstrong, & Jacobs, JJ.

*State Racing Commission. Racing. Administrative Law,* Failure to raise issue before agency, Substantial evidence.

A racetrack operator that did not object to the procedures or standard of the State Racing Commission in administrative proceedings in which it participated was not entitled to raise arguments on appeal with respect to those issues. [85]

Substantial evidence supported the State Racing Commission's determination that a racetrack operator had arbitrarily excluded a certain trainer's horses and the commission correctly directed the racetrack to accept the trainer's entries. [85-87]

Civil action commenced in the Superior Court Department on July 27, 1994.

The case was heard by *Peter M. Lauriat,* J., on a motion for summary judgment.

*Kevin M. Considine* for the plaintiff.

*Leo T. Sorokin,* Assistant Attorney General, for the State Racing Commission.

Warner, C.J. This is an appeal by Foxboro Harness, Inc. (Foxboro), from a judgment of the Superior Court in a judicial review under G. L. c. 30A, § 14, affirming a decision of the State Racing Commission (commission). Foxboro is a racetrack licensed by the commission to conduct harness horse racing meetings. The commission determined that Foxboro had arbitrarily excluded the horses of Robert Beauregard, a licensed trainer, and directed Foxboro to accept Beauregard's entries. A judge in the Superior Court denied Foxboro's mo-

[1]Robert Beauregard.

tion for summary judgment and affirmed the commission's decision. We affirm.

We summarize the significant facts appearing in the administrative record. Beauregard, who was first licensed in Massachusetts in 1983 and was also licensed in New York, New Jersey, and Pennsylvania, had raced horses at Foxboro throughout 1992 and again from May through September, 1993. On April 26, 1994, Larry Miller, the Foxboro racing secretary, told Beauregard that Foxboro would be accepting his entries for upcoming races. On April 27, 1994, an affidavit Beauregard had executed was introduced in a deposition in a civil lawsuit involving Foxboro. Representatives of Foxboro were present at the deposition and were aware of the contents of the statement. On April 28, 1994, Miller informed Beauregard that Foxboro would no longer accept his entries as a result of a "management" decision and that Beauregard could no longer race at Foxboro.

Beauregard sent a letter to the commission on May 9, 1994, in which he claimed that Foxboro had refused to accept his entries in retaliation for his having given a statement in the civil lawsuit involving Foxboro. He requested a hearing. The commission notified Beauregard and Foxboro management in a letter dated May 20, 1994, that it had scheduled a hearing on Beauregard's complaint for June 8, 1994.

Richard P. Dalton, president of Foxboro, testified for Foxboro at the hearing. He denied knowing about Beauregard's affidavit at the time he decided to exclude him. He had excluded Beauregard in part, he testified, because Beauregard's reputation could undermine public confidence in Foxboro's integrity and in part because of Beauregard's United States Trotting Association (USTA) record. Dalton could not recall any specific items in Beauregard's USTA record that he had found objectionable.

Dalton further testified that he had serious questions about Beauregard's integrity because several sources had reported to him that a horse of Beauregard's had broken loose from its stall with an extension cord taped to its neck. Dalton suggested that Beauregard had "prodded" the animal. He could neither recall who had told him about the alleged incident, when he had been told about it, or when it had allegedly occurred. Beauregard denied any involvement in such an incident. Counsel for Foxboro suggested that Beauregard had

been involved with illegal hypodermic needles. He presented no evidence to support this suggestion, and Beauregard denied any involvement with illegal drugs or needles.

Beauregard's USTA record contained five rule violations. Two occurred in Massachusetts: in 1993, he was fined fifty dollars for failing to have the owner of a horse he trained properly licensed; that same year he was fined twenty-five dollars for being on the racetrack after being called off. Three rule violations occurred in Maine: a three-day suspension for scratching a horse from a race without the judges' permission; a fifteen-day suspension for racing a horse without a prescribed medication; and a ten-day suspension for a medication violation.

Dalton's recollection was refreshed as to the nature of the violations, and he conceded that three of them — the two infractions that occurred in Massachusetts and the scratching of a horse from a race without the judges' permission in Maine — did not threaten the integrity of racing or the reputation of Foxboro. He did not know the nature of the medication violation. Beauregard testified that his sanction for racing a horse without prescribed medication resulted from his failure to file the proper paperwork.

The commission found that Foxboro had produced no evidence to support the alleged incident involving the electrical cord or to support the insinuation that Beauregard had been involved with illegal drugs or needles; that Foxboro had provided no testimony or evidence that anyone actually had a negative perception of Beauregard; and that Beauregard's racing record contained only minor violations, which would not have precluded the commission from issuing him a trainer's license.

The commission concluded that Foxboro had failed to substantiate its allegations sufficiently to justify Beauregard's exclusion based on "the reasonable discretionary business judgment standard set forth in *Catrone* v. *State Racing Commn.*, 17 Mass. App. Ct. 484 [(1984)]."[2] It found that Foxboro's decision had not been based upon sound business

---

[2]The court in *Catrone* cited various jurisdictions which permit proprietary racetracks to exclude licensed persons from participation in racing on reasonable business grounds. 17 Mass. App. Ct. at 488. However, it refrained from "draw[ing] with precision the boundaries of permissible exclusion of licensed persons" in the Commonwealth. *Id.* at 489.

judgment, but was arbitrary and capricious. The commission ordered Foxboro to admit Beauregard to its grounds and to accept entries of his horses in accordance with its usual methods of doing so.

Foxboro contends that the commission improperly impinged on the racetrack's common law rights to decide with whom it wishes to do business, arbitrarily imposing a new standard of review which was not in accord with reasonable procedures set out in its regulations. Foxboro further argues that the commission's decision was not supported by substantial evidence.

1. *The commission's standard of review.* The commission required that Foxboro's decision to refrain from dealing with Beauregard be based on a reasonable business judgment. During the hearing, both the chairman of the commission and an associate commissioner explicitly articulated that standard of review. Foxboro did not object to the commission's use of this standard. Rather, it took the position that it had complied with the standard. Neither did Foxboro object to the procedures the commission followed in conducting its review.[3]

"A party is not entitled to raise arguments on appeal that he could have raised, but did not raise, before the administrative agency . . . ." *Albert* v. *Municipal Ct. of Boston,* 388 Mass. 491, 493 (1983), citing *Shamrock Liquors, Inc.* v. *Alcoholic Bevs. Control Commn.,* 7 Mass. App. Ct. 333, 335 (1979). See *Boston Neighborhood Taxi Assn.* v. *Department of Pub. Util.,* 410 Mass. 686, 693 (1991); *Seagram Distillers Co.* v. *Alcoholic Bevs. Control Commn.,* 401 Mass. 713, 724 (1988); *Fioravanti* v. *State Racing Commn.,* 6 Mass. App. Ct. 299, 302, 304 (1978). We decline to consider arguments not made before the commission.[4]

2. *Substantial evidence.* Foxboro argues that the commission's decision was not supported by substantial evidence.

---

[3]The commission has the authority to review the conduct of its licensees. *Catrone* v. *State Racing Commn.,* 17 Mass. App. Ct. at 489-490. It has promulgated regulations governing appeals from decisions of racing officials to the commission. See 205 Code Mass. Regs. § 3.03 (1993).

[4]When Foxboro first raised these issues in its appeal in the Superior Court, the commission asserted that Foxboro had waived arguments not raised before the commission. Compare *Niles* v. *Boston Rent Control Administrator,* 6 Mass. App. Ct. 135, 151-152 (1978), where the Appeals Court refused to consider the assertion that arguments not raised before the administrative agency had been waived because no objection had been

The reviewing court, after considering the entire record, must sustain the commission's decision unless it is unsupported by substantial evidence. G. L. c. 30A, § 14(7)(*e*). *Langlitz* v. *Board of Registration of Chiropractors,* 396 Mass. 374, 379 (1985). *Barrington Fair Assn., Inc.* v. *State Racing Commn.,* 27 Mass. App. Ct. 1159, 1160 (1989). " 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6). The commission's decision was based on substantial evidence.

Foxboro had the burden of demonstrating that its decision to exclude Beauregard was reasonable.[5] Dalton testified that his decision was based in large part on Beauregard's reputation, but identified no one who had a negative perception of Beauregard. He contended that he had also relied heavily on reports about Beauregard's horse having broken loose with an extension cord taped to its neck. Yet he could not recall when the purported extension cord incident had occurred, who had told him about it, or when he had purportedly been told about it. Similarly, Foxboro's counsel's suggestion of Beauregard's involvement with illegal hypodermic needles was unsupported by any evidence. The commission properly found that Foxboro had failed to substantiate these allegations. See *Embers of Salisbury, Inc* v. *Alcoholic Bevs. Control Commn.,* 401 Mass. 526, 530 (1988) (uncorroborated hearsay or rumor does not constitute substantial evidence without indicia of reliability).

With regard to Beauregard's USTA record, Foxboro conceded that three of his five violations were unrelated to the integrity of racing. The remaining two were a medication procedure violation, the details of which Foxboro had no knowledge, and a sanction for racing a horse without prescribed medication, which Beauregard testified resulted

---

made when the issues were litigated in an initial appeal of the agency decision in the Housing Court.

[5]Foxboro implies, but does not directly argue, that the commission should have placed the burden of proof on Beauregard. During the hearing, Foxboro did not object to the allocation of the burden of proof. Thus, it has waived the issue. *Albert* v. *Municipal Ct. of Boston,* 388 Mass. at 493. *Seagram Distillers Co.* v. *Alcoholic Bevs. Control Commn.,* 401 Mass. at 724. *Boston Neighborhood Taxi Assn.* v. *Department of Pub. Util.,* 410 Mass. at 693. Moreover, Foxboro has not alleged that it suffered any harm as a result of bearing the burden of proof. G. L. c. 30A, § 14(7). *Catlin* v. *Board of Registration of Architects,* 414 Mass. 1, 6 (1992).

from his failure to file proper paperwork. The commission found that Beauregard's USTA record contained only minor violations and concluded that his record was "unremarkable."

Foxboro characterizes Beauregard's two violations involving medication as "drug related" offenses which pose a threat to the integrity of the racing industry. In support of this characterization it cites *Fioravanti* v. *State Racing Commn.*, 6 Mass. App. Ct. 299, and *Perez* v. *State Racing Commn.*, 23 Mass. App. Ct. 268 (1986). *Fioravanti* concerned the presence in a horse's urine sample of a prohibited drug which affects a horse's speed, as well as the discovery of hypodermics and syringes in a tack room assigned to the horse's trainer. 6 Mass. App. Ct. at 299-301. *Perez* concerned allegations of illegal drug sales. 23 Mass. App. Ct. at 268-269, 273. In this case, by contrast, the commission was presented with no evidence of illegal drug activity. Giving "due weight to the commission's expertise and to the discretionary authority conferred upon it by the Legislature," *Fioravanti v. State Racing Commn.*, *supra* at 303, and cases cited, we accept its determination that Beauregard's USTA violations were minor.

*Judgment affirmed.*