## R.V.H., THIRD, INC. *vs.* STATE LOTTERY COMMISSION & another.[1]

No. 97-P-2272.

Suffolk. June 4, 1999. - September 13, 1999.

Present: GREENBERG, GILLERMAN, & RAPOZA, JJ.

*State Lottery Commission. License. Statute,* Construction. *Due Process of Law,* License.

The record of a proceeding before the State Lottery Commission demonstrated that the commission acted properly in 1996, under the provisions of G. L. c. 10, § 27A, inserted by St. 1996, c. 94, to deny an application for a Keno license filed in 1994 [715-716], further the applicant never had any protected property interest in a Keno license such as would support any constitutional claims on appeal [716].

CIVIL ACTION commenced in the Superior Court Department on October 29, 1996.

The case was heard by *David M. Roseman,* J.

*Howard M. Snyder* for the plaintiff.

*Juliana deHaan Rice,* Assistant Attorney General, for State Lottery Commission.

*Kathleen P. McNally* for Licensing Board for the City of Boston.

GILLERMAN, J. The plaintiff has appealed the decision of the Superior Court affirming the decision of the State Lottery Commission (commission) which, after an adjudicatory hearing, reversed its own earlier administrative decision "to grant" a Keno license to the plaintiff. Our task is to review the administrative record that culminated in the final decision of the commission. We start with a brief description of the statutory background regarding Keno licenses which the commission was authorized to issue to licensed lottery agents, of which the plaintiff was one.

---

[1]Licensing Board for the City of Boston.

On November 11, 1994, the plaintiff filed an application for a Keno license with the commission. The governing statute then in effect, St. 1993, c. 110, § 387 (1993 Act), provided that a "license to operate" Keno was "available" to qualifying[2] lottery agents, including the plaintiff, "upon the full implementation of said game" by the commission.

The 1993 Act was amended in 1995, see St. 1995, c. 38, § 293 (1995 Act). The Legislature deleted the "full implementation" clause and it deleted the clause that a license "shall be available" to any qualified lottery agent, substituting the words, "[a] license . . . shall be granted" to any qualifying lottery agent. More important, the 1995 Act introduced the condition that "not less than twenty-one days before issuing any such license" the commission must publish notice of the pending application. If the local licensing authority objects to the application, then "[n]o . . . license shall be issued" unless, after an adjudicatory hearing in accordance with G. L. c. 30A, the chairman of the commission determines that issuance of the license would be in the public interest notwithstanding the objection of the local licensing authority. Of equal importance is subparagraph (a) which provides, in part, that the 1995 Act "does not authorize the revocation of any license granted before" July 1, 1995, the effective date of the 1995 Act (the proviso).[3]

The Keno statute was again the subject of Legislative action in 1996. See G. L. c. 10, § 27A, inserted by St. 1996, c. 94, effective January 1, 1996 (1996 Act). The 1996 Act repealed the 1993 and 1995 Acts but restored the language of the 1993 Act by making Keno licenses "available" to qualified applicants "upon the full implementation" of Keno. The 1996 Act also preserved the requirement of the 1995 Act that "[n]o such license shall be issued" over the written objection of local licensing authorities unless, after an adjudicatory hearing, the license is approved by the chairman of the commission. Finally, the 1996 Act carried forward the proviso that first appeared in the 1995 Act and which is the subject of this appeal: "provided, however, that this subsection [regarding the availability of a license to a qualified lottery sales agent] shall not authorize the

---

[2]Section 387 provided, in part, that a Keno license "shall not be issued" to any person, business, or corporation owing a financial obligation to the Commonwealth or who has been convicted of a felony.

[3]The 1995 Act was applicable for the period July 1, 1995, through December 31, 1995, and replaced the 1993 Act during that period.

revocation of any license granted before January first, nineteen hundred and ninety-six."

The material facts appearing in the administrative record are not in dispute. On December 14, 1995, more than one year after the plaintiff's application was filed, the Boston Licensing Board (board), responding to the commission's public notice, under the 1995 Act, of the plaintiff's application for a Keno license, notified the commission that it objected to the applications for a Keno license by all lottery agents engaged in the business of a retail package liquor store, including specifically the application of the plaintiff. The board, by letter to the commission, later referred to the fact that "a business which features Keno may encourage loitering and lingering of patrons inside and outside the licensed premises . . . In the [b]oard's opinion the addition of Keno in these premises will only lead to further problems of a public nuisance nature."

On April 24, 1996, the commission, now acting under the 1996 Act, held the required adjudicatory hearing on the appeal of the board from "the decision of the . . . [c]ommission to grant a Keno license to [the plaintiff]."[4] The plaintiff, which was not represented by counsel, made no claim through its representative at the hearing that it had received a Keno license in 1994 or that it objected to the hearing on the ground that the 1994 application was governed by the 1993 Act and not by the 1995 Act which did not take effect until July 1, 1995. Quite to the contrary, the plaintiff's representative testified that the equipment he had received from the commission, and which he had installed for Keno, had never operated because the commission had never provided the required Keno terminal. He also testified that he understood that for "over a year and a half . . . *all licenses*" had been "*postponed*" (emphasis added).

On September 26, 1996, the commission published its decision. The commission ruled that the board had expressed "valid reasons for objecting to the *issuance* of a Keno license" (emphasis added) to the plaintiff, that the issuance of a Keno license to the plaintiff "is not in the public interest," and that the commission's "decision to grant a Keno license to [the plaintiff] is reversed."

The plaintiff filed its complaint on October 29, 1996, almost two years after the filing of its application.

---

[4]The quoted phrase appears in the commission's final decision.

*Discussion.* Judicial review of the commission's adjudicatory proceedings is limited to the record that was before the commission, and whether that record contained "such evidence as a reasonable mind might accept as adequate to support" the commission's decision that the plaintiff was not entitled to a Keno license. See *Labor Relations Commn.* v. *University Hosp., Inc.,* 359 Mass. 516, 521 (1971).

The plaintiff argues that the commission's decision was erroneous as matter of law and deprived the plaintiff of property without due process of law.

It is undisputed that Keno was never in operation on the plaintiff's premises and there is nothing in the record which would support the conclusion that the commission had issued a license to the plaintiff or that the plaintiff had received a license from the commission. Indeed, the plaintiff's representative acknowledged at the hearing that the plaintiff understood that he never operated Keno because "all licenses" had been "postponed" — but that he was "on the list."

It is true that the commission's decision refers to the fact that, at some unidentified time, it voted "to grant" a Keno license to the plaintiff. Nevertheless, in the circumstances of this case, where the commission took steps to prevent the operation of Keno at the plaintiff's premises (by withholding certain Keno equipment), the decision "to grant" the plaintiff a license was never actually executed by the issuance of a license. Moreover, the commission was not bound to issue a Keno license to the plaintiff in 1994 under the provisions of the 1993 Act. In this connection we emphasize that the 1993 Act contemplated the issuance of a license. The 1993 Act states that a "license to operate the game known as Keno" was available to qualifying lottery agents. However, that availability was conditioned upon the "full implementation" of the Keno game. The record is barren of any suggestion that the Keno game was fully implemented at any time prior to the hearing before the commission. In fact, the plaintiff's representative testified that the implementation had been suspended, and continued to be suspended. The approval of the plaintiff's application, if that had occurred prior to the effective date of the 1995 Act, would not be the equivalent of the issuance of a license because the Keno game had not then been fully implemented. After July 1, 1995, the effective date of the 1995 Act, the board, as we have said, interposed its objections to the plaintiff's application.

No license having issued to the plaintiff, the status of the plaintiff's application was "pending" when the commission held its adjudicatory hearing on April 24, 1996, and therefore we apply the provisions of the 1996 Act. See *Selectmen of Topsfield* v. *State Racing Commn.*, 324 Mass. 309, 314 (1949) ("A change made in the law pending the application for a permit or a license rathèr than the law existing at the time of filing is to govern action on the application, and a similar rule has also been applied where the law was changed shortly after the grant of a permit or license, where little has been done under the permit or license."). Under the provisions of the 1996 Act, the objections of the board are conclusive unless the chairman of the commission decides otherwise on the ground of the public interest. The chairman did not make that determination in this case.[5]

The plaintiff also argues that it was deprived of substantive due process by the commission's decision. However, the plaintiff was never granted a license, nor did it, under the 1996 Act, have an unconditional right to a license, as discussed above. For that reason, the plaintiff did not have any protected property interest, without which there can be no violation of its constitutional rights. See *Roslindale Motor Sales, Inc.* v. *Police Commr. of Boston*, 405 Mass. 79, 82 (1989).

There was no error in the commission's decision.

*Judgment affirmed.*

---

[5]We note also that the plaintiff acquiesced in the hearing on the board's objection to the plaintiff's application for a license. At the adjudicatory hearing on April 24, 1996, the plaintiff made no argument (as it does in this court) that the 1993 Act, not the 1996 Act, governs its application. It is settled law that "[a] party is not entitled to raise arguments on appeal that he could have raised, but did not raise, before the administrative agency." See *Foxboro Harness, Inc.* v. *State Racing Commn.*, 42 Mass. App. Ct. 82, 85 (1997), quoting from *Albert* v. *Municipal Ct. of Boston*, 388 Mass. 491, 493 (1983), and cases cited.