Hillman, J.
INTRODUCTION
Plaintiff Flora Larson (“Larson”) has filed this administrative appeal pursuant to G.L.c. 30A, §14 from a final decision of the Contributory Retirement Appeal Board (“CRAB”) affirming the State Board of Retirement’s (“SBR”) denial of accidental disability retirement benefits to Larson. For the reasons set forth below, CRAB’s decision is AFFIRMED.

BACKGROUND

Larson worked at Westboro State Hospital (“Westboro”) as a nurse from September 1982 until April 3, 1987. On Larson’s last day of work at Westboro, a patient struck her on the head and knocked her to the ground. As a result, Larson sustained injuries to her head, neck and back.
In the days following the incident, Larson experienced persistent headaches, dizziness and neck pain. On April 17, 1987, Dr. John Bianchi observed Larson. Bianchi opined that Larson suffered cervical-dorsal sprain and referred Larson to physical therapy.
On June 24, 1987, a little more than two months after seeing Dr. Bianchi, Larson visited Dr. Arthur Safran. In Dr. Safran’s opinion, Larson’s symptoms of headaches, dizziness and neck pain resulted from facial injury and muscle contraction pain. Approximately eight months later, on February 10, 1988, Dr. *650 Safran re-evaluated Larson and found no evidence of fracture or defect in bone alignment. Dr. Safran further concluded that Larson had suffered soft tissue injury and cervical injury complicated by post traumatic stress syndrome with fearfulness, insomnia and recurrent dreams of injury. Dr. Safran further recommended that Larson undergo a psychiatric evaluation.
A little more than a year later, on February 27, 1989, Larson consulted Dr. Safran for a third time. Dr. Safran then diagnosed Larson with cervical spondylo-sis and with cervical strain superimposed. Dr. Safran stated, in his opinion, that Larson could return to work at Westboro so long as Westboro did not require her to lift or restrain patients.
On January 6, 1992, approximately three years after her third visit with Dr. Safran, Larson met with a different physician, Dr. Vincent Birbiglia. Larson told Dr. Birbiglia that she suffered from episodic blackouts. In Dr. Birbiglia’s opinion, Larson suffered from episodic blackouts. Dr. Birbiglia, in a letter to Larson’s attorney, stated that Larson’s blackouts were not related to the injury she suffered at Westboro. Later, in July of 1992, Dr. Birbiglia ordered that Larson undergo both an EEG and a 72-hour Holier monitor. Neither one of these tests revealed an abnormality.
On March 18, 1992, Larson consulted Dr. Safran for a fourth time. Dr. Safran then diagnosed Larson with neck and back pain. Dr. Safran, however, found no evidence of objective abnormalities. Dr. Safran concluded that the injury Larson suffered while working at Westboro did not cause her blackouts.
Sometime later Larson applied for accidental dis-abiliiy retirement benefits. In February 1997, a regional medical panel comprised of three physicians convened to examine Ms. Larson pursuant to G.L.c. 32, §7. Drs. Lawrence Shields (orthopedic surgeon), Mordecai Berkowitz (orthopedic surgeon), and Thomas Sciascia (neurologist) comprised the panel.
Dr. Sciascia examined Larson on February 11, 1997. Dr. Sciascia concluded that in his opinion, Larson suffered from syncope[1] and postural dizziness and that Larson was permanently incapacitated from performing her job duties at Westboro. Dr. Sciascia further stated that in his opinion as a neurologist, Larson’s injury at Westboro caused her syncope and postural dizziness.
Dr. Shields examined Larson on February 21, 1997. Dr. Shields stated, that in his opinion, Larson was permanently disabled. Dr. Shields, however, expressed uncertainty as to whether Larson’s injury at Westboro caused her syncopal episodes. Specifically, Dr. Shields stated: “Whether the syncopal episodes have been related to [Larson’s] fall and head trauma is beyond the scope of the orthopedic surgeon and must be determined neurologically.”
Dr. Berkowitz examined Larson on February 27, 1997. Dr. Berkowitz stated that in his opinion, Larson was not disabled from performing her job duties. He concluded that he was “unable to appreciate any clear-cut objective findings from an orthopedic perspective, which would preclude her working as a Registered Nurse.”
Thus, only Dr. Sciascia concluded that Larson was permanently disabled from performing her job duties as a registered nurse and that the injury Larson sustained while working at Westboro caused her permanent disability. Drs. Berkowitz and Shields did not concur with Dr. Sciascia’s conclusion. A majority of the regional medical panel, therefore, did not agree that Larson was permanently disabled from performing her job as a result of the injuries she sustained while working at Westboro. Consequently, the State Retirement Board denied Larson’s application for accidental disability retirement benefits. Shortly thereafter, Larson appealed the State Retirement Board’s decision.
On February 10, 1998, the Division of Administrative Law Appeals held a hearing on Larson’s appeal. On March 30, 1998, the Division affirmed the State Board of Retirement’s denial of Larson’s claim stating that she failed to meet her burden of proof regarding causation. Larson objected to the Division’s decision on April 3, 1998. As a result, the Contributory Retirement Appeal Board (“CRAB”) conducted a hearing on the matter. CRAB affirmed the decision of the State Board of Retirement on July 20, 1998, because of Larson’s failure to sustain her burden of proof that the injury she sustained while working at Westboro caused her disability. Larson now appeals the matter to this Court pursuant to G.L.c. 30A, §14.

DISCUSSION

The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Coggin v. Massachusetts Parole Bd., 42 Mass.App.Ct. 584, 587 (1997); Boston v. Outdoor Advertising Bd., 41 Mass.App.Ct. 775, 782 (1996), citing [Merisme]. Merisme v. Bd. of Appeals on Motor Vehicle Liab. Policies & Bonds., 27 Mass.App.Ct. 470, 474 (1989). In reviewing the agency decision, this Court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Iodice v. Architectural Access Bd., 424 Mass. 370, 375-76 (1997), citing G.L.c. 30A, §14(7); Amone v. Comm’r of the Dept. of Social Services, 43 Mass.App.Ct. 33, 34 (1997); Foxboro Harness, Inc. v. State Racing Comm’n, 42 Mass.App.Ct. 82, 87 (1997); Cahalen v. Comm’r of the Dept. of Employ, and Training, 41 Mass.App.Ct. 26, 27 (1996); Van Munching Co. v. Alcoholic Beverages Control Comm’n, 41 Mass.App.Ct. 308, 309 (1996); Phillip's case, 41 Mass.App.Ct. 612, 615 (1996) (workers’ compensation); Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Re *651 gional Vocational Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982), citing Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n, 372 Mass. 152, 154 (1977).[2]
“The approach is one of judicial deference and restraint, but not abdication.” Amone v. Comm’r of the Dept. of Social Services, 43 Mass.App.Ct. 33, 34 (1997), citing Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 572 (1996). A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988); Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm’n, 385 Mass. 651, 657 (1982). New claims may not be raised on appeal if they were not also raised at the administrative appeal. Aronoff v. Bd. of Registration in Medicine, 420 Mass. 830, 835 n.5 (1995); Foxboro Harness, Inc. v. State Racing Comm’n, 42 Mass.App.Ct. 82, 85, rev. denied, 424 Mass. 1107 (1997); M.H. Gordon & Son, Inc. v. Alcoholic Beverages Control Comm’n, 386 Mass. 64, 73 (1982). A reviewing court may order that “additional evidence be taken before the agency” only upon a showing that it is “material” and that there was “good reason” for failure to present it in the original proceeding. Northeast Metro. Reg. Voc. Sch. Dist. Comm. v. Massachusetts Comm’n Against Discrimination, 35 Mass.App.Ct. 813, 817 (1994); Benmosche v. Bd. of Registration in Medicine, 412 Mass. 82, 88 (1992).
Larson contends that this Court should reverse and remand CRAB’s decision for three reasons. First, Larson argues that CRAB’s decision was erroneous as a matter of law. Second, Larson argues that CRAB's decision was unsupported by substantial evidence. Third, Larson argues that the regional medical panel was not properly comprised. Given the high standard of deference that Massachusetts law accords to an agency’s decision, this Court affirms CRAB’s decision denying Larson’s retirement benefits.
CRAB’s decision to affirm the regional board’s decision was correct as a matter of law because the majority of the doctors that comprised the regional medical panel did not opine that Larson was permanently disabled from performing her job as a result of her work-related injury. Before receiving accidental disability retirement benefits, the applicant must obtain a certification by a majority of a three-doctor medical panel. Kelley v. CRAB, 341 Mass. 611, 614 (1961). This certification must state that the applicant is totally and permanently disabled from performing her particular job, as a result of a personal injury sustained or a hazard undergone while in the performance of her duties. Id.
G.L.c. 32, §7 defines disability as “the total and permanent incapacity of an applicant to further perform the duties of her regular job.” The Supreme Judicial Court interpreted disability as used in G.L.c. 32, §7 to mean “the substantial inability of an applicant to perform the duties of [her] particular job or work of a similar nature or for which [her] training and qualifications fit [her].” Quincy Retirement Board v. CRAB, 340 Mass. 56, 60 (1959). In the case at bar, each one of the doctors who comprised the medical panel had examined Larson. After conducting the examination, a majority of the regional medical panel refused to grant Larson the requisite certification of disability.
A decision of an administrative agency may be set aside on judicial review only if the reviewing court determines that such a decision is unsupported by substantial evidence. G.L.c. 30A, §14(7). Substantial evidence is defined in G.L.c. 32, §1(6) as “such evidence as a reasonable mind might accept as adequate to support a conclusion.” McCarthy v. Contributory Retirement Appeal Board, 342 Mass. 45, 47 (1961); Cataldo v. Contributory Retirement Appeal Board, 343 Mass. 312, 314 (1961). There is nothing in the record that suggests a lack of consideration of this evidence. The record contains Larson’s job description and all of Larson’s medical records, including the regional medical panel’s report. This evidence provided CRAB with a reasonable basis for making its determination.
Larson contends that the regional medical review board that reviewed her application for retirement benefits was not properly comprised because two of the doctors on that board, Dr. Shields and Dr. Berkowitz, were orthopedic surgeons. Larson contends that the board should have consisted entirely of neurologists. This Court does not agree with Larson’s contention. The statute is G.L.c. 32, §6(3)(a), which provides in pertinent part:
Such regional medical panel shall be appointed by the public employee retirement administration commission from a pool of physicians developed after consultation with representatives of the Massachusetts medical Society and the department of public health and shall consist of three physicians, who shall not be associated physicians, and who shall be selected for the purpose of examining the member whose retirement is under consideration and shall, so far as practicable, be skilled in the particular branch of medicine or surgery involved in the case. (Emphasis supplied.)
A plain reading of G.L.c. 32, §6(3)(a) suggests that the regional medical panel that convened to hear Larson’s case was properly comprised. As mentioned above, Larson sustained injuries to her neck, head and back as a result of the patient’s attack on her at Westboro. In this case, the regional medical panel was comprised of one neurologist and two orthopedic surgeons. Larson objects to the inclusion of orthopedic surgeons on the panel. Orthopedic surgeons specialize in injuries to bones. Bone injury was involved in this case because Larson sustained injuries to her back *652 (vertebrae), head and neck. Thus, in accordance with G.L.c. 32, §6(3)(a), the regional medical panel was comprised of physicians skilled in the particular branches of medicine or surgery involved in the case.
Moreover, c. 32, §6(3)(a) mandates that, so far as practicable, three doctors skilled in the particular branch of medicine or surgery involved in the case comprise the regional medical panel (emphasis supplied). This statute, therefore, does not mandate that the state employ every effort to form a regional medical panel tailored to an applicant’s specific medical problem. Larson has failed to produce any evidence in the record that indicates that there were an adequate number of neurologists available to comprise a regional medical panel. Not all of the doctors in the Greater Boston Area contract with the state. Not all of these doctors, therefore, were available to examine Larson. CRAB’s decision, therefore, must be affirmed.

ORDER

For the foregoing reasons, it is hereby ORDERED that CRAB’S decision be AFFIRMED.

 Syncope is the brief loss of consciousness due to a temporary deficiency of oxygen to the brain.

 Likewise, this Court cannot interfere with the administration’s imposition of a penalty unless there are “extraordinary circumstances." Vaspourakan Ltd. v. Alcoholic Beverages Control Comm'n, 401 Mass. 347, 355 (1987), citing Levy v. Bd. of Registration & Discipline in Medicine, 378 Mass. 519, 528-529 (1979).