Gants, J.
In October 2000, the defendant CirSan Realty Trust (“CirSan”) applied to the plaintiff Woburn Zoning Board of Appeals (“the ZBA”) for a comprehensive permit under the Anti-Snob Zoning Act (“the Act”), G.L.c. 40B, §§20-23, to build mixed-income affordable rental housing in Woburn. After the ZBA denied CirSan’s permit application, CirSan timely appealed the denial to the Housing Appeals Committee in the Massachusetts Department of Housing and Community Development (“the HAC”) under G.L.c. 40B, §22. The HAC vacated the ZBA’s decision and directed it to issue a comprehensive permit for the proposed housing development. The ZBA has sought review of the HAC’s decision under G.L.c. 30A, contending that it was premised upon errors of law and not supported by substantial evidence. All parties now move for judgment on the pleadings. After hearing, the ZBA’s motion for judgment on the pleadings is DENIED, the HAC’s motion for judgment on the pleadings is ALLOWED, and the HAC decision is AFFIRMED.
STANDARD OF REVIEW
G.L.c. 30A, §14 grants any person who is aggrieved by a decision of any agency in an adjudicatory proceeding the right to appeal that decision to the Superior Court. This Court may reverse or modify the agency decision “if it determines that the substantial rights of any party may have been prejudiced because the agency decision is unsupported by substantial evidence; or arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.” G.L.c. 30A, §14(7). When reviewing an agency’s decision, “the court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” Id. The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Reg’l Vocational Sch. Dist. v. Labor Relations Comm, 386 Mass. 414, 420-21 (1982), citing Olde Towne Liquor Store, Inc. v. Alcoholic Beverage Control Comm, 372 Mass. 152, 154 (1977). The Court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm, 385 Mass. 651, 657 (1982). The appealing party (the ZBA) has the burden of showing that its substantial rights have been prejudiced by the agency’s error. G.L.c. 30A, §14(7) (1992); Catlin v. Board of Registration of Architects, 414 Mass. 1, 6 (1992).
DISCUSSION
The ZBA essentially makes three arguments in support of its motion for judgment on the pleadings, which this Court will address in turn. Before doing so, however, it is necessary to understand the purpose behind the Act, its key implementing provisions, and the regulations established to administer it.
The Act and Its Implementing Regulations
Under G.L.c. 40B, §21, “(a]ny public agency or limited dividend or nonprofit organization proposing to build low or moderate housing may submit to the board of appeals ... a single application to build such housing in lieu of separate application to the applicable local boards.” G.L.c. 40B, §21. In determining whether to issue a comprehensive permit, the ZBA has the “same power to issue permits or approvals as any local board or official who would otherwise act with respect to such application,” including the power to impose various conditions on the proposed develop *705 ment. G.L.c. 40B, §21. Not only does the ZBA, in evaluating a comprehensive permit application, have the power to issue whatever permits or approvals are needed to commence construction, but the ZBA also has the power to override local zoning by-laws and ordinances when they are not “consistent with local needs,” as that phrase is defined in G.L.c. 40B, §20. Board of Appeals of Hanover v. Housing Appeals Comm, 363 Mass. 339, 354-55 (1973).
When the ZBA denies a comprehensive permit application, the applicant may appeal the denial to the HAC, which reviews the denial and issues a written decision. G.L.c. 40B, §22. The hearing before the HAC is limited “to the issue of whether . . . the decision of the [ZBA] was reasonable and consistent with local needs . . .” G.L.c. 40B, §23. “If the [HAC] finds, in the case of a denial, that the decision of the [ZBA] was unreasonable and not consistent with local needs, it shall vacate such decision and shall direct the [ZBA] to issue a comprehensive permit or approval to the applicant.” Id. The Act specifically defines the phrase “consistent with local needs”:
. . . [Requirements and regulations shall be considered consistent with local needs if they are reasonable in view of the regional need for low-and moderate-income housing considered with the number of low income persons in the city or town affected and the need to protect the health and safety of the occupants of the proposed housing or of the residents of the city or town, to promote better site and building design in relation to the surroundings, or to preserve open spaces, and if such requirements and regulations are applied as equally as possible to both subsidized and unsubsidized housing. Requirements or regulations shall be consistent with local needs when imposed by a board of zoning appeals after comprehensive hearing in a city or town where (1) low or moderate income housing exists which is in excess of ten per cent of the housing units reported in the latest federal decennial census of the city or town or on sites comprising one and one half per cent or more of the total land area zoned for residential, commercial or industrial use or (2) the application before the board would result in the commencement of construction of such housing on sites comprising more than three tenths of one per cent of such land area or ten acres, whichever is larger, in any one calendar year
G.L.c. 40B, §20.
When one examines the practical consequence of this language of the Act, it becomes clear that a ZBA’s denial of a comprehensive permit application will always be affirmed by the HAC as “consistent with local needs” if that city or town:
already has a housing stock comprised of at least ten percent low and moderate income housing, or devotes at least 1V2 percent of its developed land to low and moderate housing; or
if the proposed low or moderate housing development is so large as to comprise 3/io of one percent (.003) of the land in the city or town, or ten acres, whichever is greater.
When a city or town, however, has failed to meet these low-or moderate-income housing minima and the proposed development’s size falls below the .003 or ten-acre threshold, then the HAC is required to overrule the local ZBA and order the issuance of a comprehensive permit if it finds that the ZBA’s decision is “unreasonable and not consistent with local needs.” In essence, a city or town retains the essentially unfettered power to decide whether to approve or deny a comprehensive permit application for a low-and moderate-income housing development that is less than ten acres in size if the city or town has already provided its statutorily-defined fair share of low-and moderate-income housing. If the city or town has not provided its fair share, any denial by its ZBA of a comprehensive permit application may be vacated by the HAC if it is found unreasonable. Stated differently, the Commonwealth, through the HAC, may interfere with local ZBA decisions regarding low-and moderate-income housing permit applications only when the locality fails to provide a minimum quantity of low-and moderate-income housing. Once it meets that minimum requirement, it can do what it wants with future comprehensive permit applications. Board of Appeals of Hanover v. Housing Appeals Comm, 363 Mass, at 367 (“This result reflects the Legislature’s desire to preserve local autonomy once the community has satisfied its minimum obligation”).
The statutory language (and its pragmatic consequence) reflects the legislative intent of the Act as shown by its legislative history. A report of the Legislative Research Council, prepared in response to a Senate Order, found that “economic discrimination” in local zoning was impairing the ability of low-and moderate-income persons in all racial and religious groups from finding homes they could afford. Report of the Legislative Research Council relative to Restricting the Zoning Power to Ciiy and County Governments (“the Report”), 1968 Senate No. 1133, No. 28, quoted in Board of Appeals of Hanover v. Housing Appeals Comm, 363 Mass, at 348. The Report concluded that the Commonwealth was suffering from a housing shortage “of crisis proportions” while, at the same time, local restrictive zoning practices, such as minimum lot and floor area requirements, were having a substantial negative impact on the construction of low-and moderate-income housing. Board of Appeals of Hanover v. Housing Appeals Comm, 363 Mass, at 348-49. The Report recommended a plan that would allow cities and towns to direct their own development but would permit, in appropriate cases, “the circumvention of exclusionary zoning by-laws where their *706 enforcement would frustrate the State’s need for more low and moderate income housing.” Id. at 350. As the various bills that arose from the Report evolved into what ultimately became the Act, the Massachusetts Legislature’s intent was “to provide relief from exclusionary zoning practices which prevented the construction of badly needed low and moderate income housing.” Id. at 353-54. The design of the Act appears to reflect a legislative recognition that cities and towns that have already met the minimum low-and moderate-income housing requirements do not engage in exclusionary zoning practices. Moreover, the minimum requirements serve to prod those cities and towns that have yet to reach those thresholds to do so in order to retain control over future proposed low-and moderate-income housing developments.
The Department of Housing and Community Development’s implementing regulations attempt to embody both the language of the Act and its legislative purpose in the burdens of proof it imposes as to appeals before the HAC. An applicant whose housing development has been denied by a ZBA establishes a prima facie case that the denial is unreasonable and not consistent with local needs once it proves “that its proposal complies with federal or state statutes or regulations, or with generally recognized standards as to matters of health, safely, the environment, design, open space, or other matters of local concern.” 760 CMR 31.06(2). Once the applicant has established a prima facie case, the burden shifts to the ZBA to show that its denial was reasonable and consistent with local needs. The ZBA can satisfy this burden in one of two ways. First, as already discussed, it may “conclusively” demonstrate that its decision was consistent with local needs by showing that more than ten percent of the cify’s or town’s housing stock is low-or moderate-income housing or that more than 1V2 percent of its land is devoted to low-or moderate-income housing. 760 CMR 31.06(5). Second, if the city or town falls below that minimum threshold, the ZBA “shall have the burden of proving, first, that there is a valid health, safety, environmental, design, open space or other local concern which supports such denial, and then, that such concern outweighs the regional housing need.” 760 CMR 31.06(6). If the ZBA meets its burden, but not “conclusively” so, the burden shifts to the applicant to prove in rebuttal “that preventive or corrective measures have been proposed which will mitigate the local concern, or that there is an alternative means of protecting local concerns which makes the project economic.” 760 CMR 31.06(9).
The HAC Decision
After a site visit and a six-day evidentiary hearing, the HAC issued its 15-page unanimous decision on June 11,2003. Under a pre-hearing stipulation agreed to by all parties, it was stipulated that CirSan satisfied all relevant jurisdictional requirements, that it was a limited dividend organization funded by a subsidizing agency, and that Woburn failed to meet any of the statutory minima set forth in G.L.c. 40B, §20, thereby foreclosing any defense that the ZBA’s decision should be conclusively found to be consistent with local needs. HAC Decision at 1 n. 1; Administrative Record (“AR”) at 3. The HAC found that CirSan established its prima facie case of showing that its proposal complied with state and federal requirements and generally recognized design standards, so the burden then shifted to the ZBA to prove that its denial was supported by valid health, safety, environmental, or other local concerns, and that these concerns outweighed the regional need for housing. HAC Decision at 4; AR at 6. The ZBA offered six local concerns to justify its denial of the comprehensive permit: (1) the need to blast about 120,000 cubic yards of soil and underlying rock; (2) the traffic volume generated by the proposed development; (3) the design of the intersection of the access roadway with Main Street; (4) the “serpentine” design of the proposed access roadway; (5) the emergency access to the apartment building along the secondary, emergency access road, with its 14 percent grade; and (6) the parking configuration. HAC Decision at 4-12; AR at 6-14. The HAC specifically addressed each of these six concerns, imposed additional conditions on the proposed housing development to alleviate some of them, and concluded that none of them, even when considered collectively, were sufficient to outweigh the regional need for affordable housing. HAC Decision at 4-14; AR at 6-16.
The ZBA’s Arguments on Appeal
The ZBA’s primary challenge to the HAC Decision is that the HAC reached the conclusion that the ZBA failed to meet its burden of proving that its local concerns outweighed the regional need for affordable housing without any evidence as to the regional need for affordable housing. The HAC, however, did not need any such evidence, because it was entitled to reach this finding based solely on ZBA’s stipulation that Woburn failed to meet any of the statutory minima set forth in G.L.c. 40B, §20 and the evidentiary presumption contained in 760 CMR31.07(l)(e), which specifically declares, “Proof that a town has failed to satisfy one of the statutory minima . . . shall create a presumption that there is a substantial regional housing need which outweighs local concerns.” The ZBA failed to offer any evidence to rebut the presumption that there was a substantial regional housing need, so the HAC was entitled to rely on the evidentiary presumption contained in its regulations.
No doubt recognizing that its primary argument is defeated by the evidentiary presumption contained in the regulation, the ZBA contends that this regulation is contrary to law and therefore beyond the authority of the Department of Housing and Community Development to promulgate. This argument fails on two grounds. First, the ZBA never challenged the legality of this regulation before the HAC, and there *707 fore waived its right to challenge it here. See Foxboro Harness, Inc. v. State Racing Comm’n, 42 Mass.App.Ct. 82, 86 n.5 (1997) (party challenging an administrative finding failed to object to the allocation of the burden of proof and thereby waived the issue on appeal). In the Pre-Hearing Order, which formalized matters agreed to by the parties before the case was tried before the HAC, the parties identified specifically “the sole issues in dispute.” Pre-Hearing Order at 3; AR at 100. The ZBA never identified as an issue whether the evidentiaiy presumption in 760 CMR 31.07(l)(e) was valid, or whether there was any regional housing need for affordable housing. It simply identified as an issue whether its valid local concerns outweighed the regional housing need. It would be fundamentally unfair to permit the ZBA to argue this legal issue on appeal for the first time when, if it had been raised before the HAC, CirSan could easily have mooted it by presenting evidence of the regional need for low-and moderate-income housing.
Second, even if this argument had not been waived, this Court finds that the Department of Housing and Community Development lawiully acted well within its authority in promulgating the regulation setting forth this evidentiaiy presumption. This regulation is supported by the Supreme Judicial Court’s declaration in Board of Appeals of Hanover v. Housing Appeals Comm. that “the municipality’s failure to meet its minimum housing obligations, as defined in §20, will provide compelling evidence that the regional need for housing does in fact outweigh the objections to the proposal.” 363 Mass, at 367. Indeed, this precedent was so central to the creation of this regulation that it is cited as part of the regulation. 760 CMR 31.07(1) (e). While the Supreme Judicial Court did not formally establish the presumption set forth in the regulation, it was reasonable for the Department of Housing and Community Development to conclude that, if the failure of a cily or town to meet any of the statutory minima is “compelling evidence that the regional need for housing does in fact outweigh the objections to the proposal,” then a factfinder may presume from such a failure that “there is a substantial regional housing need which outweighs local concerns” in the absence of contrary evidence. Board of Appeals of Hanover v. Housing Appeals Comm, 363 Mass. at 367; 760 CMR 31.07(1)(e). See generally Hotchkiss v. State Racing Comm’n, 45 Mass.App.Ct. 684, 691-92 (1998) (where the agency’s interpretation of statute within its charge is reasonable, court should defer to it).
The ZBA argues that the cited quotation in Board of Appeals of Hanover v. Housing Appeals Comm. giving evidentiaiy weight to the failure to satisfy any of the statutory minima is no longer an accurate statement of law, having been essentially overruled by the Supreme Judicial Court in Bagley v. Illyrian Gardens, Inc., 401 Mass. 822, 826 (1988). In Bagley, the ZBA for the City of Worcester issued a comprehensive permit to build subsidized housing for low-and moderate-income elderly and handicapped persons. Id. at 823. Residents of the neighborhood filed an appeal of the issuance of the comprehensive permit in the Superior Court under G.L.c. 40B, §21, and the appeal was subsequently transferred to the Worcester division of the Housing Court. Id. at 823-24. The Supreme Judicial Court ruled that the Worcester division of the Housing Court did not have jurisdiction to try the case, reversed its affirmance of the ZBA decision, and remanded the case to the Superior Court. Id. at 825. “(I]n the interest of judicial economy and expedience,” the Court decided to rule on the plaintiffs’ other challenges to the Housing Court’s decision, recognizing that it was unnecessary to do so in view of its decision regarding jurisdiction. Id. The Court declared:
The plaintiffs argue that the Housing Court’s decision cannot be upheld, as there was no evidence presented on the issue of the regional need for low-and moderate-income housing. This being so, they argue, the judge could not determine properly whether the board’s decision to grant the comprehensive permit was “consistent with local needs” as that phrase is defined in G.L.c. 40B, §20 (1986 ed.). “The ‘consistent with local needs’ standard requires [the board] to balance the regional need for low and moderate income housing against any objection to the details of the proposed plan.” Board of Appeals of Hanover v. Housing Appeals Comm, 363 Mass. 339, 365 (1973). The plaintiffs argue that the absence of any evidence going to this issue shows that the judge could not have performed the required balancing. We agree. While there was extensive testimony going to the local need for subsidized housing, the record is devoid of any evidence as to regional need. Although the judge may have inferred from the evidence of local need for subsidized housing that there was a comparable need at the regional level, such an inference could be based only on speculation or consideration of extra-record facts, as the evidence dealt exclusively with conditions in the city of Worcester, and there is no reference to those of any other community.
Id. at 825-26. The ZBA contends that this language is inconsistent with the “compelling evidence” language in Board of Appeals of Hanover and with the evidentiary presumption in 760 CMR 31.07(1)(e).
There are four reasons why this language in Bagley should not be interpreted as overruling the “compelling evidence” language in Board of Appeals of Hanover and invalidating the evidentiaiy presumption in 760 CMR 31.07(1)(e). First, Bagley involved a judicial appeal of the grant of a comprehensive permit, not the administrative appeal of the denial of such a permit. The evidentiaiy presumption in 760 CMR 31.07(1)(e) governs only how the HAC weighs evidence in the appeal of a denial of a comprehensive permit under G.L.c. 40B, §22; it does not govern how a court must weigh evidence in the appeal of a grant of a comprehensive permit under G.L.c. 40B, §21.
*708 Second, the evidentiary presumption in 760 CMR 31.07(1)(e) did not exist at the time the Housing Court heard the appeal in October 1986. This Court has reviewed the applicable HAC regulations as of December 31, 1986, and discovered that they contained no evidentiary presumption.[1] Therefore, the applicant could not have enjoyed the benefit of the presumption in the Housing Court appeal even if it was deemed applicable to judicial, as well as administrative, appeals of comprehensive permit applications.
Third, the decision in Bagley is silent as to whether the plaintiffs offered contrary evidence challenging the regional need for affordable housing. If such evidence was indeed proffered without rebuttal, even otherwise “compelling evidence” may not be sufficient to outweigh the objections to the housing proposal.
Fourth, to be blunt, this Court does not believe that the Supreme Judicial Court intended the above-quoted paragraph to overrule its earlier “compelling evidence” language, and to require that a city or town that has failed to meet any of the statutory minima for affordable housing prevail at the HAC in its denial of a comprehensive permit application unless the applicant presents evidence establishing the regional need for affordable housing. It is plain from the legislative history of the Act that the Legislature found that there was an affordable housing crisis throughout the Commonwealth in the late- 1960s and that the problem was getting progressively worse. See Board of Appeals of Hanover v. Housing Appeals Comm, 363 Mass, at 347-50. It is equally plain that the dire need for affordable housing in this Commonwealth endures today. The statutory minima serve as a useful proxy for the local need for affordable housing, and the local need for housing is certainly evidence of the regional need for housing, since the locality comprises part of its region. See Bagley v. Illyrian Gardens, Inc., 401 Mass, at 826 n.4 (“ ‘local’ need relates to the municipality directly concerned,... while ‘regional’ need includes surrounding communities”). If there is indeed no regional need for affordable housing despite the failure of the city or town within that region to meet the statutory minima for affordable housing, then the ZBA of that city or town, not the applicant, is better positioned to proffer that evidence. If this Court were to give Bagley the broad interpretation sought by the ZBA here, it would obstruct the legislative purpose of the Act and place the judiciary in the unusual position of being the only persons in this Commonwealth who do not recognize that affordable housing is in short supply.
Having found that the evidentiary presumption in 760 CMR 31.07(1)(e) is a reasonable interpretation of the Act and the governing case law, this Court need not dwell long on the ZBA’s remaining argumentthat there was not substantial evidence to support the HAC’s factual findings in its decision. Giving the HAC’s fact-finding the deference to which it is entitled, this Court finds that there was more than substantial evidence to support those findings.
ORDER
For the reasons detailed above, this Court hereby ORDERS that:
1. The ZBA’s motion for judgment on the pleadings is DENIED,
2. The HAC’s motion for judgment on the pleadings is ALLOWED,
3. The HAC decision is AFFIRMED, and
4. Judgment shall enter forthwith in favor of the defendants, with statutory costs.

This Court has not ascertained precisely when the regulation was promulgated, or whether it was promulgated before the March 9, 1988 decision in Bagley. To be sure,, the evidentiary presumption was contained within the regulations that were effective as of July 1, 1993. While this Court believes the evidentiary presumption became effective as of this latter date, it cannot be certain of it.